Lawrence B. ORDOWER, et al.,
Plaintiffs-Appellants,

v.

Leonard FELDMAN, et al., Defendants,

and

Sinclair Global Brokerage Corporation,
Defendant-Appellee.

No. 86–2588.

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 10, 1987.

Decided Aug. 21, 1987.

Lawrence B. Ordower, Ordower & Ordower, P.C., Chicago, Ill., for plaintiffs-appellants.

Philip M. Bloom, Bloom & Bloom, Chicago, Ill., for defendant-appellee.

Before COFFEY and MANION, Circuit Judges, and ESCHBACH, Senior Circuit Judge.

MANION, Circuit Judge.

Plaintiffs and their counsel appeal the district court's imposition of sanctions against them. For the reasons set forth below, we affirm.

## I.

### PROCEEDINGS BELOW

On August 2, 1985, Lawrence Ordower, an Illinois attorney, filed a complaint against numerous defendants on behalf of himself, his law firm, Ordower & Ordower, P.C., and Ordower & Ordower, P.C. Pension Trust.[1] The complaint alleged that the defendants maintained a scheme to defraud the plaintiffs in violation of the Securities Exchange Act of 1934, the Commodities Exchange Act, and the Racketeer Influenced and Corrupt Organizations Act (RICO). The complaint also alleged three pendent state claims.

We have difficulty determining from whom the plaintiffs intended to recover on these claims. For some unknown reason the complaint names eight defendants in the caption but then names twelve defendants in the portion of the complaint under the heading "Defendants." Moreover, two of the captioned defendants are not listed in "Defendants" portion of the complaint but do receive attention elsewhere in the complaint. Thus, it appears that plaintiffs named fourteen defendants in the complaint.

Plaintiffs also left everyone guessing as to which defendants would be served with the complaint and when plaintiffs would attempt service. In three separate installments over the course of the seven and one-half months from the time of filing, plaintiffs served only six of the fourteen defendants.

The defendants served first, Berwyn National Bank and Charles F. Krcilek, filed their answer on September 4, 1985. Plaintiffs soon settled with these defendants, and the district court dismissed the complaint with prejudice as to Berwyn National Bank and Krcilek in December, 1985.

The next round of service occurred in January, 1986, over 150 days after the complaint was filed. During this round, plaintiffs served the Chicago Mercantile Exchange, K & S Commodities, Inc. and Morris Krumhorn. All three defendants quickly responded with motions to dismiss under Fed.R.Civ.P. 4(j)[2] because service was effectuated beyond that rule's 120–day limit. Pursuant to a settlement, the exact terms of which are not in the record, plaintiffs

---

1. For ease of reference we refer to Lawrence Ordower, Ordower & Ordower P.C., and Ordower & Ordower, P.C. Pension Trust collectively as "plaintiffs" even though Lawrence Ordower was also acting as counsel of record.

2. Rule 4(j) provides:
   **(j) Summons: Time Limit for Service.** If a service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint and the party on whose behalf such service was required cannot show good cause why such service was not made within that period, the action shall be dismissed as to that defendant without prejudice upon the court's own initiative with notice to such party or upon motion. This subdivision shall not apply to service in a foreign country pursuant to subdivision (i) of this rule.

stipulated to dismiss the complaint with prejudice against these defendants. The stipulation also agreed to dismiss an unserved defendant, Ronald Schiller. The district court dismissed the complaint against the Chicago Mercantile Exchange on February 28, 1986. On March 7, 1986, the district court dismissed the complaint against K & S Commodities, Morris Krumhorn and Ronald Schiller.

After the district court dismissed the complaint against K & S Commodities, Krumhorn, and Schiller, plaintiffs concentrated on Sinclair Global Brokerage Corporation (Sinclair Global). On March 18, 1986, seven and one-half months after the complaint was filed, plaintiffs served Sinclair Global. Sinclair Global wasted no time in moving to dismiss the complaint for untimely service under Rule 4(j). Sinclair Global also moved for sanctions under 28 U.S.C. § 1927 claiming that plaintiffs' untimely service was unreasonable and vexatious. Sinclair Global contended that there was no excuse for untimely service because the parties were quite familiar with one another due to their involvement in related litigation. Sinclair Global also noted that, due to the filing of the previous Rule 4(j) motions by other defendants, plaintiffs were clearly aware that service upon Sinclair Global was untimely. As such, Sinclair Global argued that plaintiffs acted unreasonably and vexatiously when they served the complaint knowing that a Rule 4(j) motion was inevitable and that the motion would be granted.

In response to Sinclair Global's motions, plaintiffs did not attempt to avoid a Rule 4(j) dismissal of their complaint by showing good cause for untimely service. Rather, plaintiffs filed a motion to voluntarily dismiss their complaint under Fed.R.Civ.P. 41(a)(2). Lawrence Ordower did reply to Sinclair Global's motion for sanctions, arguing that his service of the complaint did not violate 28 U.S.C. § 1927.

The district court denied plaintiffs' Rule 41 motion and dismissed the complaint without prejudice under Rule 4(j) on the grounds that plaintiffs' untimely service had not been justified by a showing of any good cause for the delay. The district court further found that, under the circumstances of the case, plaintiffs' conduct was "vexatious and unreasonable" and imposed sanctions against "plaintiffs and their counsel of record." Stating that it was sufficiently familiar with the litigation to impose sanctions "without the necessity of time sheets and other evidence of costs," the district court ordered "plaintiffs and their counsel of record" to pay $1,000 to Sinclair Global.

## II.

### ISSUES ON APPEAL

Plaintiff presents two grounds of error on appeal. These are: (1) that the district court abused its discretion in imposing sanctions against the plaintiffs; and (2) that the district court abused its discretion in ordering plaintiffs to pay $1,000 to Sinclair Global without first receiving evidence regarding Sinclair Global's expenses.

## III.

### ANALYSIS

#### A. *Jurisdiction*

Before addressing the merits, we must first determine whether we have jurisdiction to hear this appeal. Under 28 U.S.C. § 1291 courts of appeals are empowered to hear appeals from "final decisions" of a district court. The record before us raises two significant questions as to the finality of the district court's order. First, the district court's order did not finally dispose of plaintiffs' action against Sinclair Global on the merits. Rather, the district court simply dismissed plaintiffs' complaint *without prejudice* for untimely service under Rule 4(j). Second, several defendants named in the complaint have not been served by plaintiffs. These particular circumstances present substantial questions as to the finality of the district court's order.[3] Unfortunately, the parties have

---

**3.** The imposition of sanctions against an attorney is normally immediately appealable under

not enlightened the court on these jurisdictional issues. Plaintiffs' brief gives us a conclusory citation to 28 U.S.C. § 1291. Defendant does not even do that much. We remind counsel that they have an obligation to fully brief jurisdictional issues. Ignoring them does not establish jurisdiction by default.

"In general, a decision is final for the purpose of § 1291 if it ends the litigation on the merits and leaves nothing for the district court to do but execute the judgment." *Baltimore Orioles, Inc. v. Major League Baseball Players Association*, 805 F.2d 663, 666 (7th Cir.1986), *cert. denied*, —— U.S. ——, 107 S.Ct. 1593, 94 L.Ed.2d 782 (1987). The fact that a complaint is dismissed without prejudice, however, does not bar a decision from being considered "final" for purposes of appeal. This circuit has held on previous occasions that such orders may be considered final under § 1291. *See Car Carriers, Inc. v. Ford Motor Co.*, 789 F.2d 589, 591 n. 4 (7th Cir.1986); *United States v. Mt. Vernon Memorial Estates, Inc.*, 734 F.2d 1230, 1234 (7th Cir.1984).

The dispositive issue in determining the finality of a district court's order for purposes of appeal is whether the dismissal effectively terminates plaintiff's litigation in federal court. *See generally Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 9–10, 103 S.Ct. 927, 933–934, 74 L.Ed.2d 765 (1983); *Mazanec v. North Judson-San Pierre School Corp.*, 750 F.2d 625, 627 (7th Cir.1984); *Bragg v. Reed*, 592 F.2d 1136, 1138 (10th

Cir.1979). If a district court's dismissal leaves a plaintiff free to file an amended complaint, the dismissal is not considered a final appealable order. *See Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1111 (7th Cir.1984); *Petty v. Manpower, Inc.*, 591 F.2d 615, 617 (10th Cir.1979). However, "[i]f it is clear that the plaintiff may not start over again with a properly drawn complaint, because of limitations problems or otherwise, the action is treated as final and the order is appealable." *Bragg*, 592 F.2d at 1138; *see also Gray v. Fidelity Acceptance Corp.*, 634 F.2d 226, 227 (5th Cir.1981).

Here, the district court's order is final for purposes of appeal because it effectively terminated plaintiffs' federal litigation. The complaint states that plaintiffs became aware of defendants' allegedly fraudulent activities in September of 1982. The most generous limitations period on any of their federal claims, however, was three years,[4] and the defendants made no secret of the fact that they sought a Rule 4(j) dismissal because of plaintiffs' limitations problems. Had plaintiffs attempted to file a new complaint containing their federal claims after the district court's Rule 4(j) dismissal in 1986, their federal claims would have been dismissed as untimely, *see generally Winters v. Teledyne Movible Offshore, Inc.*, 776 F.2d 1304, 1307 (5th Cir.1985); *Wei v. Hawaii*, 763 F.2d 370, 372 (9th Cir.1985), and their pendent state claims would have been dismissed as well. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). Thus, the

the "collateral order" exception to the finality rule. *See Frazier v. Cast*, 771 F.2d 259 (7th Cir.1985). The rationale for allowing such interlocutory appeals is that as a non-party to the litigation, the attorney has no control over settlement of the litigation and, thus, no control over whether an appealable final order may be entered in the action. *Id.* at 262. Since the sanctioned attorney in this matter is also a party to the lawsuit, the collateral order exception has no applicability to this matter.

4. Plaintiffs' claims under the Securities Exchange Act of 1934 were subject to a three year limitations period. *See Norris v. Wirtz*, 818 F.2d 1329 (7th Cir.1987); *Suslick v. Rothschild Securities Corp.*, 741 F.2d 1000, 1004 (7th Cir.1984). Assuming that the two year limitations period of

7 U.S.C. § 25(c) did not apply to claims accruing in 1982, *see* 7 U.S.C. § 25(d), plaintiffs' Commodities Exchange Act claims were governed by a three year limitations period. *See Andrews v. Heinold Commodities, Inc.*, 771 F.2d 184, 186 (7th Cir.1985). At the time of the district court's dismissal of the complaint, plaintiffs' civil RICO claims were governed by a two-year limitations period. *See Tellis v. United States Fidelity & Guaranty Co.*, 805 F.2d 741, 746 (7th Cir.1986), *vacated*, —— U.S. ——, 107 S.Ct. 3255, 97 L.Ed.2d 755 (1987); *but see Agency Holding Corp. v. Malley-Duff & Associates*, —— U.S. ——, 107 S.Ct. 2759, 97 L.Ed.2d 121 (1987) (adopting federal four-year limitations period for civil RICO claims).

district court's Rule 4(j) dismissal effectively terminated plaintiffs' federal litigation against Sinclair Global.

The fact that plaintiffs' federal claims against Sinclair Global are time-barred does not end our jurisdictional inquiry. We must next consider the effect that the presence of unserved defendants has on the finality of the district court's order. This problem has received differing treatment among the circuits. The Third Circuit has held that the presence of unserved defendants is not a bar to finality because an unserved defendant is not a "party" to the lawsuit. *See De Tore v. Local #245*, 615 F.2d 980, 982 n. 2 (3d Cir.1980). On the other hand, the Eighth Circuit has held that the presence of unserved defendants prevents a decision from being considered final if the plaintiff is free to attempt further process on those defendants. *See Haley v. Simmons*, 529 F.2d 78, 79 (8th Cir. 1976); *but see Patchick v. Kensington Publishing Corp.*, 743 F.2d 675, 677 (9th Cir.1984) (stating that decision may be final when unserved defendants are present because "[i]n such circumstances there is no reason to assume that there will be any further adjudication of the action").

We need not decide which of the differing approaches to take because the district court's decision would be considered final under either approach. For all practical purposes, plaintiffs' case against the unserved defendants is over. Any attempt by plaintiffs to serve the complaint on the unserved defendants would be clearly untimely under Rule 4(j) and any new complaint filed by plaintiffs would be dismissed as time-barred. Accordingly, the district court's order dismissing plaintiff's complaint as to Sinclair Global was a final decision for purposes of appeal under 28 U.S.C. § 1291.

**B.** *Violation of Rule 11 or 28 U.S.C. § 1927*

■ In awarding sanctions against plaintiffs, the district court did not expressly state whether the sanctions were imposed pursuant to Fed.R.Civ.P. 11, 28 U.S.C. § 1927, or both. Sinclair Global moved for sanctions under 28 U.S.C. § 1927 which provides only for the imposition of sanctions against counsel. The district court, however, awarded sanctions against both "plaintiffs and their counsel of record." Since Rule 11 provides for the imposition of sanctions against parties and their attorneys (and allows district courts to proceed on their own motion), it is apparent that the district court was proceeding under both Rule 11 and 28 U.S.C. § 1927.[5]

(i) *Rule 11.* Rule 11 provides in relevant part:

> The signature of an attorney or party constitutes a certificate by the signer that he has read the pleading, motion, or other paper; that to the best of the signer's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation. . . . If a pleading, motion, or other paper is signed in violation of this rule, the court ... shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or other paper, including a reasonable attorney's fee.

Under Rule 11 the conduct of an attorney or a party is analyzed in view of its "reasonableness under the circumstances." *Indianapolis Colts v. Mayor of Baltimore*, 775 F.2d 177, 181 (7th Cir.1985); *Zaldivar v. City of Los Angeles*, 780 F.2d 823, 831 n.

---

**5.** At oral argument plaintiffs claimed that Rule 11 was inapplicable because they did not "sign" anything. Lawrence Ordower's signature, however, appears on the complaint filed with the district court. By signing that complaint Or-

dower certified that the complaint was not "interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation." Fed.R. Civ.P. 11.

9 (9th Cir.1986). Good faith is not a defense to the imposition of Rule 11 sanctions. *See Thornton v. Wahl*, 787 F.2d 1151, 1154 (7th Cir.), *cert. denied*, —— U.S. ——, 107 S.Ct. 181, 93 L.Ed.2d 116 (1986) ("[a]n empty head but a pure heart is no defense" to the imposition of Rule 11 sanctions).

(ii) *28 U.S.C. § 1927*. 28 U.S.C. § 1927 provides in relevant part:

> Any attorney ... who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess cost, expenses, and attorneys' fees incurred because of such conduct.

In *Knorr Brake Corp. v. Harbil, Inc.*, 738 F.2d 223, 226 (7th Cir.1984), this circuit stated that to violate § 1927, "the attorney must intentionally file or prosecute a claim that lacks a plausible legal or factual basis." The intent requirement enunciated in *Knorr Brake*, however, may be satisfied by showing reckless conduct by an attorney. *In re TCI, Ltd.*, 769 F.2d 441, 445–46 (7th Cir.1985). In this regard, the court in *In re TCI, Ltd.* stated:

> If a lawyer pursues a path that a reasonably careful attorney would have known, after appropriate inquiry, to be unsound, the conduct is objectively unreasonable and vexatious. To put this a little differently, a lawyer engages in bad faith by acting recklessly or with indifference to the law, as well as by acting in the teeth of what he knows to be the law. Our court has long treated reckless and intentional conduct as similar.... A lawyer's reckless indifference to the law may impose substantial costs on the adverse party. Section 1927 permits a court to insist that the attorney bear the cost of his own lack of care.

769 F.2d at 445 (citations omitted).

(iii) *Standard of Review*

■ We apply two different standards of review to a district court's award of sanctions. We may reverse the district court's resolution of factual issues underlying the award only if its findings are clearly erroneous. *See Zaldivar*, 780 F.2d at 828. Whether the decision to award sanctions was appropriate under the factual background of the case, however, is subject to review for abuse of discretion. *R.K. Harp Investment Corp. v. McQuade*, 825 F.2d 1101, 1103 (7th Cir.1987) (Rule 11); *Frazier v. Cast*, 771 F.2d 259, 262–63 (7th Cir.1985) (Rule 11); *Indianapolis Colts*, 775 F.2d at 182 (§ 1927). When reviewing for abuse of discretion we keep in mind that "because the trial court alone has an intimate familiarity with the relevant proceedings" it is in a far superior position to pass on an attorney's conduct than a reviewing court. *R.K. Harp Investment Corp.*, at 1103; *see also Westmoreland v. CBS, Inc.*, 770 F.2d 1168, 1174 (D.C.Cir.1985).

■ Whether reviewed under Rule 11 or 28 U.S.C. § 1927, we do not believe that the district court abused its discretion when it imposed sanctions upon the plaintiffs. The district court found that plaintiffs vexatiously and unreasonably multiplied the proceedings by serving Sinclair Global even though it must have been aware that Sinclair Global would move to dismiss under Rule 4(j) and that the Rule 4(j) motion would be granted. This inference drawn by the district court is not clearly erroneous. The parties to this litigation were well acquainted with one another and other defendants had quickly responded to plaintiffs' previous untimely service with Rule 4(j) motions. Those previous motions clearly pointed out that, due to the various applicable limitations periods, a Rule 4(j) dismissal would operate to foreclose all plaintiffs' federal claims. Given the limitations bar, it is hard to believe that plaintiffs would expect anything other than a Rule 4(j) motion from Sinclair Global.

Plaintiffs contend that the district court's view of the proceedings was erroneous because there were significant questions as to whether there was good cause for the untimely service. This assertion, however, simply begs the question of why plaintiffs failed to challenge the Rule 4(j) motion by attempting to show good cause (and thereby saving their federal claims in the process). Indeed, plaintiffs' belated attempts to show good cause make clear that there

was no challenge to the motion because there was no basis for arguing good cause. For example, plaintiffs claimed that good cause may have existed because they had tried to serve Sinclair Global on two previous occasions. Both prior attempts at service, however, came well beyond the 120–day limit of Rule 4(j). Plaintiffs' other examples of "good cause" are equally specious. For example, plaintiffs point out that Sinclair Global's attorney had apparently moved his offices from one location in Chicago to another. Plaintiffs did not bother to enlighten the district court (or this court) as to how this or the other facts mentioned by plaintiffs had any impact on their untimely service. More to the point, plaintiffs did not present any facts to explain why they were able to serve Sinclair Global in March, but not within the Rule 4(j) time limit. In short, we see no error in the district court's conclusion that plaintiffs served Sinclair Global well outside the time limit of Rule 4(j) without good cause and with the knowledge that a Rule 4(j) motion would inevitably be filed.

Plaintiffs nonetheless argue that the district court abused its discretion because Rule 4(j) is similar to a limitations defense in that litigation may proceed unless the defense is asserted. Accordingly, plaintiffs contend that they could only have acted unreasonably if they continued to insist that service was proper after the Rule 4(j) motion was filed. We disagree. The fact that a Rule 4(j) motion is similar to an affirmative defense does not automatically make any service reasonable. Each case rests upon its own facts. *See, e.g., Dreis & Krump Manufacturing Co. v. Machinists and Aerospace Workers*, 802 F.2d 247, 254–55 (7th Cir.1986) (in sanctioning party court relies on, among other things, filing of untimely complaint). In the present matter, plaintiffs served Sinclair Global well beyond Rule 4(j)'s 120–day time limit with the virtual certainty that Sinclair Global would, as had all the other untimely served defendants, file a motion to dismiss under Rule 4(j). Under these circumstances, the district court did not abuse its discretion in sanctioning plaintiffs.

Similarly, plaintiffs contend that sanctions were inappropriate because their Rule 41(a)(2) motion offered Sinclair Global everything it requested. This is not so. Plaintiffs moved to voluntarily dismiss the complaint only *after* they had put Sinclair Global to the bother and expense of filing a Rule 4(j) motion. Sinclair Global sought recompense for having to respond to the service.

Finally, by focusing exclusively on the service of the complaint on Sinclair Global, plaintiffs ignore the factual background behind the district court's award. Plaintiffs were pursuing a strategy of serving the defendants piecemeal, most of them untimely. This strategy was clearly contrary to normal litigation procedure, *see Excalibur Oil Inc. v. Gable*, 105 F.R.D. 543, 544 (N.D.Ill.1985) ("normal ... conduct ... is to place the summons for service immediately.... Rule 4(j)'s 120–day watershed establishes not some kind of norm, but rather an *outside* not-to-be-exceeded date....") (emphasis in original), and was pursued with total indifference to Rule 4(j). Plaintiffs' strange ritual forced defendants to keep coming into the case simply to go through the paces before having their complaint dismissed. In turn, the district court was dragged in to oversee the dismissal of defendants on four separate occasions over the course of five months. Whether (as Sinclair Global claims) plaintiffs' strategy was a deliberate bad faith attempt to extract large piecemeal settlements from the defendants, or whether plaintiffs simply acted with complete indifference to the litigation that *they* commenced, plaintiffs' conduct was unreasonable and resulted in unnecessary delay and multiplication of the proceedings.

## C. *Appropriateness of Selected Sanction*

█ Plaintiffs also contend that the district court abused its discretion when it awarded the $1,000 sanction without having evidence submitted concerning the appropriateness of that figure. We disagree.

The determination of what constitutes an appropriate sanction rests within the sound discretion of the district court. *Cheek v.*

*Doe*, 828 F.2d 395, 397 (7th Cir.1987); *In re TCI Ltd.*, 769 F.2d 441, 448 (7th Cir.1985). While we have held that a district court abuses its discretion when it grants a substantial attorney fee award without adequate documentation, *see Cauley v. Wilson*, 754 F.2d 769, 772 (7th Cir.1985), we have never held that a district court must always receive documentation of attorney's fees and other expenses prior to awarding sanctions. By its own terms, Rule 11 does not require that attorney's fees be awarded—it only requires that the sanction be "appropriate." *See Cheek v. Doe*, 828 F.2d at 397. Moreover, even when awarding sanctions under § 1927, we do not believe that a district court judge familiar with the proceedings acts beyond his discretion when he awards a relatively small flat sum that bears a reasonable relationship to the burden imposed upon the non-offending party. *See Malhiot v. Southern California Retail Clerks Union*, 735 F.2d 1133, 1138 (9th Cir.1984) (court awards flat sum of $1500 without documentation as sanction for violating 28 U.S.C. § 1927), *cert. denied*, 469 U.S. 1189, 105 S.Ct. 959, 83 L.Ed.2d 965 (1985). Indeed, this circuit has on several occasions awarded a flat sum award as "damages" under Fed.R.App.P. 38 without having evidence of attorney's fees and other expenses submitted before it. *See Cheek*, 828 F.2d at 398 ($1500 award); *Hilgeford v. Peoples Bank*, 776 F.2d 176, 179 (7th Cir.1985) ($500 award), *cert. denied*, — U.S. ——, 106 S.Ct. 1644, 90 L.Ed.2d 188 (1986).

In the present case, the district court did not abuse its discretion by awarding the $1,000 sanction without first having evidence of attorney's fees submitted before it. The district court's less than draconian sanction was a carefully measured response to the sanctioned conduct. The district court was familiar with the litigation and we have no reason to doubt (as Sinclair Global contends) that plaintiffs, not Sinclair Global, benefitted by not having Sinclair Global's actual expenses placed in the record. In any event, the district court's choice of sanction in this case was not an abuse of discretion.

### D. *Sanctions on Appeal*

■ In the last paragraph in its brief Sinclair Global claims entitlement to receive additional sanctions. Sinclair Global, however, does not bother to cite to a Rule of Appellate Procedure, Rule of Civil Procedure or statutory provision under which it believes it is entitled to fees. Nor does it cite us any case law to support its proposition. This afterthought without citation to authority is insufficient to raise the issue before this court. *See Manbourne, Inc. v. Conrad*, 796 F.2d 884, 888 (7th Cir.1986) (perfunctory and underdeveloped arguments deemed waived).

This is not to say that this court will not, on its own motion, award sanctions under Fed.R.App.P. 38 if it deems an appeal to be frivolous. Plaintiffs did not, however, violate Rule 38. Although ultimately non-meritorious, plaintiffs have presented substantial arguments on appeal.

We note that, if properly raised, the expense incurred on appeal by a party defending the district court's award of sanctions is normally recoverable as an expense incurred as a result of the sanctioned conduct below. *See Westmoreland v. CBS, Inc.*, 770 F.2d 1168, 1179 (D.C.Cir.1985) (Fed.R.Civ.P. 11); *see also Tamari v. Bache & Co. (Lebanon) S.A.L.*, 729 F.2d 469, 475 (7th Cir.1984) (Fed.R.Civ.P. 37). Otherwise, the cost of defending the sanctions on appeal will often offset the award obtained. *See Westmoreland*, 770 F.2d at 1179; *Tamari*, 729 F.2d at 475. We also note that, as a practical matter, defendant's failure to brief this issue as well as the jurisdictional issue has minimized its expenses on appeal. We see no need to minimize them further.

### IV.

### CONCLUSION

The district court's judgment is affirmed. The appellee's request for expenses on appeal is denied.

AFFIRMED.