**Paris KOTSILIERIS, Plaintiff,**

v.

**Hymen P. CHALMERS, Andy Nanos and Electronics, Missiles & Communications, Incorporated, Defendants–Appellees.**

**Appeal of Ronald P. KANE and Michael A. Kraft.**

**No. 91–1973.**

United States Court of Appeals, Seventh Circuit.

Argued Jan. 15, 1992.

Decided July 10, 1992.

Daniel F. Webb, Chicago, Ill., Joseph M. Fitzsimmons, Melville B. Bowen, Kevin F. Bowen, Fitzsimmons & Bowen, Oakbrook, Ill., for plaintiff.

Ronald L. Marmer, Howard R. Barron, Howard S. Suskin (argued), Jenner & Block, Chicago, Ill., for defendants-appellees.

Ronald P. Kane (argued), Siegan, Barbakoff & Gomberg, Chicago, Ill., for appellants.

Before WOOD, Jr.,* COFFEY, Circuit Judges, and CURRAN,** District Judge.

HARLINGTON WOOD, JR., Circuit Judge.

This case not only tests the limits of the district court's discretion, but it tests this court's discretion as well. Today, we must decide whether a district court abused its discretion under 28 U.S.C. § 1927 when awarding attorneys' fees against counsel who inadvertently waited until the eve of trial before making a jury demand. In deciding this issue we must address two questions: did counsel act vexatiously, and was $5,546.25 an excessive award?

## I.

Ronald P. Kane and Michael A. Kraft, the appellants in this case, served as counsel for the plaintiff, Paris Kotsilieris, in a suit against Hymen P. Chalmers, Andy Nanos and Electronics, Missiles & Communications, Incorporated ("Chalmers"). Kane and Kraft constituted the third set of coun-

---

* Judge Wood, Jr. assumed senior status on January 16, 1992, which was after oral argument in this case.

** The Honorable Thomas J. Curran, District Judge for the Eastern District of Wisconsin, is sitting by designation.

sel for Kotsilieris. Kane and Kraft entered the case about three years after the filing of the initial complaint. About one and one-half years after beginning their representation, defense counsel informed Kane and Kraft that no jury request had been made. Kane and Kraft, who had wrongly assumed that such a request had been made, filed a belated jury demand. Kane and Kraft's request was made close to the eve of trial, four and one-half years after the initiation of Kotsilieris's suit. Recognizing the importance of protecting the plaintiff's interest in receiving a trial by jury, the district court granted this belated motion. Although granting this motion, the district court found Kane and Kraft's failure to make a jury demand before the eve of trial inexcusable. The district court characterized this failure as an act of extreme negligence. Based on this finding, the district court awarded Chalmers $5,546.25 in attorneys' fees under 28 U.S.C. § 1927.

Kane and Kraft challenge the district court's order of attorneys' fees on two grounds. First, Kane and Kraft argue that although they acted negligently in failing to make a jury request, this negligent conduct does not rise to the level of vexatious conduct required for section 1927 sanctions. Second, Kane and Kraft argue that the award of $5,546.25 in attorneys' fees was excessive.

While the facts of this case, in our view, push the bounds of district court discretion, we will defer to the good judgment of Judge Williams and hold that the district court did not abuse its discretion in finding that Kane and Kraft's conduct warranted an award of attorneys' fees. Nonetheless, to balance this close call, we find that the district court did abuse its discretion in awarding such a large sum in relationship to the sanctioned conduct. The district court limited the award to the fees defendants incurred in responding to Kotsilieris's belated jury request—$5,546.25 is an excessive fee for a response to such a motion.

## II.

### A. *Jurisdiction.*

■ The district court order for sanctions is not a final order under 28 U.S.C. § 1291. Kraft and Kane argue that this court has jurisdiction over this interlocutory appeal under the collateral order doctrine. We agree.

Three criteria must be satisfied before an interlocutory order can be reviewed on appeal as a collateral order: " 'the order must conclusively determine the disputed question, resolve an important issue completely separate from the merits of the action, and be effectively unreviewable on appeal from a final judgment.' " *Knorr Brake Corp. v. Harbil, Inc.,* 738 F.2d 223, 226 (7th Cir. 1984) (citation omitted).

In *Knorr* this court held that an order granting attorneys' fees under 28 U.S.C. § 1927 against counsel who no longer has connection with the case meets these criteria. Kane and Kraft, who no longer represent Kotsilieris, suffered section 1927 sanctions. Therefore, we have appellate jurisdiction to review the district court's order of attorneys' fees under the collateral order doctrine. *Id.* at 226.

### B. *Was Award Justified?*

■ The decision to award sanctions is solely within the discretion of the district court subject to the abuse of discretion standard. *Kapco v. Mfg. Co. v. C & O Enter., Inc.,* 886 F.2d 1485, 1491 (7th Cir. 1989).

Under section 1927 an attorney "who so multiplies the proceedings in any case *unreasonably and vexatiously* may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927 (emphasis added). The meaning of "vexatiously" is at the heart of this dispute.

■ Chalmers argues that objectively unreasonable behavior constitutes vexatious conduct under section 1927.[1] Such a

---

**1.** Although Chalmers does not phrase it in this    manner, we understand Chalmers's argument to

reading seems to equate vexatious with unreasonable conduct. However, the statute explicitly requires that counsel act unreasonably *and* vexatiously before sanctions are warranted. We can, therefore, assume that Congress intended vexatiously to mean something other than unreasonably. In fact, our decisions have indicated just that. That is, our past decisions have interpreted vexatious to mean either subjective or objective bad faith. *See, for example, Ordower v. Feldman*, 826 F.2d 1569, 1574 (7th Cir.1987) (indicating that intentional ill will or reckless conduct constitutes vexatious conduct); *In re TCI Ltd.*, 769 F.2d 441, 445 (7th Cir.1985) (bad faith can be demonstrated by subjective evidence of malice, objective evidence of reckless conduct, or indifference to the law).

Chalmers, however, cites a few of this court's statements out of context in order to argue that ordinary negligence meets section 1927's vexatious requirement. One case on which Chalmers relies in arguing that vexatious conduct is the same as objectively unreasonable conduct is *Walter v. Fiorenzo*, 840 F.2d 427, 433 (7th Cir.1988). However, when reading the entire sentence on which Chalmers relies for this proposition, rather than reading only that portion of the sentence which Chalmers quoted, it becomes clear that ordinary negligence was not the standard set forth in that case. To the contrary, in *Fiorenzo* this court stated, "A court may impose sanctions under 28 U.S.C. § 1927, against an attorney where that attorney has acted in an objectively unreasonable manner *by engaging in a 'serious and studied disregard for the orderly process of justice'....*" *Fiorenzo*, 840 F.2d at 433 (citations omitted) (emphasis added). This statement certainly does not stand for the proposition that *any* unreasonable conduct is sanctionable under section 1927.

Chalmers also relies on *TCI* in arguing that objectively unreasonable conduct satisfies section 1927's vexatious requirement. However, we must be careful to place that case in context. In *TCI* this court was

grappling with the question of whether bad faith meant something other than subjective ill will. *TCI*, 769 F.2d at 445. Therefore, any reference to objective reasonableness in that case was made in order to emphasize that bad faith can be demonstrated by objective as well as subjective evidence—which we explained meant that recklessness or indifference to the law constitutes bad faith. *Id.; see also Ordower*, 826 F.2d at 1574 (interpreting *TCI* to mean that reckless conduct as well as intentional conduct is sufficient for section 1927 sanctions). Stating that bad faith has an objective component is far from saying that ordinary negligence constitutes bad faith.

Chalmers also relies on *Hill v. Norfolk Western Railway Co.*, 814 F.2d 1192, 1202 (7th Cir.1987), for the proposition that ordinary negligence constitutes vexatious conduct. However, our discussion in *Norfolk*, like the discussion in *TCI*, focuses on whether or not intentional misconduct is a prerequisite for imposing sanctions under section 1927. As such, that case was not necessarily dealing with the question of whether ordinary negligence is sufficient for section 1927 sanctions. And, in any event, *Norfolk* was decided on Rule 38 grounds, not section 1927 grounds.

As the Supreme Court indicated in *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 421, 98 S.Ct. 694, 700, 54 L.Ed.2d 648 (1978), it is difficult to apply abstract words to concrete cases. If our language has been less than clear it is because of this difficulty and not because we intended to extend the meaning of vexatious to encompass ordinary negligence. Indeed, when we look to the facts in our prior decisions, we find no cases where we have upheld sanctions upon a showing of a simple mistake or ordinary negligence. Rather, cases in which this court has upheld section 1927 sanctions have involved situations in which counsel acted recklessly, counsel raised baseless claims despite notice of the frivolous nature of these claims, or counsel otherwise showed indifference to statutes,

---

mean that any objectively unreasonable act, even ordinary negligence, meets the vexatious requirement.

rules, or court orders. *See, for example, Fred A. Smith Lumber Co. v. Edidin*, 845 F.2d 750, 752–54 (7th Cir.1988) (took ostrich-like tactic of pretending potentially dispositive authority did not exist; persisted in putting forth claims despite fact that statute of limitations clearly barred claims; and acted in bad faith in filing a fraud claim in hopes that future discovery would lead to sufficient facts to support such a claim); *Fiorenzo*, 840 F.2d at 435 (counsel sanctioned because after four years of discovery and after dismissal of three other defendants it should have been obvious to counsel that claim was baseless without alleging more facts); *Ordower*, 826 F.2d at 1575 (method of serving defendants in piecemeal fashion constituted total indifference to Fed.R.Civ.P. 4(j)); *Westinghouse Elec. Corp. v. NLRB*, 809 F.2d 419 (7th Cir.1987) (indifference to Rules of Appellate Procedure and this court's order). Even *Westinghouse*—a case in which this court acknowledged that counsel's actions may have been nothing more than "negligent inattention" to the rules of appellate procedure—involved more than ordinary negligence. Counsel in *Westinghouse* ignored appellate rules as well as an explicit order by this court. Playing ostrich to avoid compliance with appellate rules and court orders constitutes indifference for these rules and orders, and, even if not intentional, such indifference goes beyond ordinary negligence.

It is also important to note that we have found no decisions, nor has Chalmers pointed to any decisions, where other courts of appeals allowed section 1927 sanctions upon a showing of ordinary negligence. Rather, it appears that other courts of appeals require either objective or subjective bad faith. *See, for example, Williams v. Giant Eagle Markets, Inc.*, 883 F.2d 1184, 1191 (3rd Cir.1989) (standard is one of willful bad faith); *Wages v. IRS*, 915 F.2d 1230, 1235 (9th Cir.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 986, 112 L.Ed.2d 1071 (1991) (need a showing of bad faith for section 1927 sanctions); *Dreiling v. Peugeot Motors of America, Inc.*, 850 F.2d 1373 (10th Cir.1988) (bad faith for purposes of section 1927 requires more than a showing of negligence or frivolity).

■ Under the current state of the law, something more than ordinary negligence must exist in order to justify the order of sanctions. Nonetheless, the fact that ordinary negligence fails to meet the bad faith test does not mean that extraordinary or extreme negligence also fails. To the contrary, we have held that the bad faith standard has an objective component, and extremely negligent conduct, like reckless and indifferent conduct, satisfies this standard.

■ Kane and Kraft served as Kotsilieris's third set of counsel. Kotsilieris retained the law firm of Kucia, Statton, Leszcynski and Hoy, P.C. ("Kucia") as its first set of counsel. On May 27, 1986, Kucia filed the initial complaint in Kotsilieris's action against Chalmers. Prior to the filing of this complaint, Kotsilieris informed Kucia that he wanted a jury trial. However, Kucia inadvertently failed to make a jury demand on the face of the complaint and no separate demand was filed within ten days of this filing; such a filing is required for a jury trial by demand under Rule 38(b). Kucia had, however, checked the "yes" box on a civil cover sheet filed with the complaint in response to the question of whether a jury demand has been made in the complaint.

In April of 1987 Kucia withdrew from representing Kotsilieris, and Fitzsimmons & Bowen took over Kotsilieris's case. Fitzsimmons & Bowen did not make a jury request during their tenure. In September of 1989, Kane and Kraft became Kotsilieris's counsel. By the time Kane and Kraft entered the picture, a third amended complaint had already been filed. Moreover, Kane and Kraft were also involved in the related case of *Govas v. Chalmers* (Cas. No. 89 C 0734). The *Govas* case was initiated by Kotsilieris's initial counsel, Kucia. This case involved similar issues as the Kotsilieris case and it involved the same defendants. Because of the relatedness between these cases, the *Govas* case was transferred to Judge Williams, the same judge who was handling the *Kotsilieris*

case. Moreover, it appears that these cases became consolidated for at least discovery purposes until the dismissal of *Govas* in December of 1990. The related *Govas* case contained a proper jury request.

All seemed fine, with Kotsilieris, Kane, Kraft, and even Judge Williams assuming the case would go to a jury and the defendants apparently assuming otherwise. That is, all was fine until January 7, 1991, when defense counsel pointed out that Kotsilieris had never made a jury demand. Defense counsel brought this fact to Kane and Kraft's attention in response to Kane and Kraft's indication in a December 13, 1990, status conference that the case would proceed by jury. On January 11, 1991, Kane and Kraft filed a motion for a discretionary grant of a jury trial under Fed. R.Civ.P. 38(b). This motion was made close to the eve of trial, seventeen months after Kane and Kraft entered as Kotsilieris's counsel. Judge Williams characterized Kane and Kraft's failure to make this motion until the eve of trial as extremely negligent, and she awarded section 1927 sanctions.

Counsel should make sure that prior counsel took all necessary procedural steps on behalf of the client, and Kane and Kraft's failure to notice the absence of a jury request was clearly negligent. Chalmers, however, does not really explain why Kane and Kraft's actions rise to the level of reckless or extremely negligent conduct necessary to sustain section 1927 sanctions except that the delay was lengthy and the consequences severe. We agree that extreme confusion resulted from this belated motion, but it is less clear that this confusion resulted from extreme negligence.

Judge Williams found that until defense counsel informed them otherwise, Kane and Kraft sincerely assumed that an appropriate jury demand had been made by prior counsel. One can argue that this was not an entirely unreasonable assumption considering that Kotsilieris, former counsel and Judge Williams were all acting under this same assumption, and considering that the related *Govas* case contained a proper jury demand. Moreover, at the time Kane and Kraft entered the picture the parties were working under the third amended complaint, not the original complaint where a jury demand should have been made. Furthermore, this mistake is arguably somewhat understandable when considering the sheer volume of documents that counsel was dealing with in this case, including nine volumes of pleadings and twenty volumes of transcripts.

Nonetheless, when reviewing a district court order for abuse of discretion, the question is not whether this court would order sanctions on the same facts, but whether the district court abused its discretion. In most instances counsel's failure to notice prior counsel's error or omission in one of voluminous documents may not constitute any more than ordinary negligence. Nonetheless, we are not dealing with just any document, we are dealing with an omission in a complaint—a document of vital importance. And, more importantly, a jury demand is no ordinary demand. The decision whether to try a case before a jury is a central and vital decision. Indeed, the critical nature of such a decision is highlighted by the fact the right to trial by jury is constitutionally protected under the Seventh Amendment. Considering the central importance of preserving a party's right to a trial by jury, we cannot say that Judge Williams abused her discretion when determining that counsel's failure to protect this right was extremely negligent, sanctionable conduct. As such, Judge Williams did not abuse her discretion in awarding section 1927 sanctions against Kane and Kraft.

### C. *Was Award Excessive?*

◼ Judge Williams limited the award of fees to the amount that Chalmers incurred in responding to plaintiff's belated jury request. Chalmers's counsel submitted a Verified Accounting of Expenses asking for $5,723.75 in attorneys' fees. The district court awarded $5,546.25 in fees. This award follows the hourly allotment and hourly fee rate suggested by the accounting except that it excludes time spent reviewing the district court's order to grant a jury trial.

We review a district court's award of attorneys' fees for abuse of discretion. *Illinois v. Sangamo Constr. Co.*, 657 F.2d 855, 862 (7th Cir.1981). Although we rarely disturb a district court's ruling on what constitutes reasonable attorneys' fees, *Federal Deposit Insurance Corp. v. O'Neil*, 809 F.2d 350, 355 (7th Cir.1987), we have indicated that a petition for fees should set forth a sufficient description of the type of work performed. *Vocca v. Playboy Hotel of Chicago, Inc.*, 686 F.2d 605, 608 (7th Cir.1982). Defense counsel's breakdown of expenses lacks the desired specificity for us to understand how the defense spent its time and resources. For example, up to $843.75 of fees in the accounting are attributable to time in which defense counsel "worked on jury demand issues." We must remember that Judge Williams limited the award to that time spent on responding to the plaintiff's jury request. It is not entirely clear that this work on jury demand issues fits within these parameters.

Not only does counsel's accounting lack the desired specificity, but the district court's order also lacks the specificity necessary to sustain this award. Chalmers's response to plaintiff's motion was seven pages in length. This short response relied on only a few cases, all of which were contained in plaintiff's motion. Despite the sparse number of cases which defense counsel had to deal with in writing this short response, defense counsel's accounting indicates that anywhere between $1,000.00 and $2,500.00 of this fee is attributable to researching jury demand issues, and apparently much of the remainder is attributable to writing and reviewing this short, seven-page response. Moreover, it is important to note that courts closely guard a party's interest in proceeding to a trial by jury, meaning that untimely jury requests should be allowed absent strong and compelling reasons to the contrary. *Merritt v. Faulkner*, 697 F.2d 761, 767 (7th Cir.), *cert. denied*, 464 U.S. 986, 104 S.Ct. 434, 78 L.Ed.2d 366 (1983). Recognizing this fact, defense counsel acknowledged in its reply to plaintiff's motion that the trial court might be reluctant to deny plaintiff's jury request. In light of this acknowledgment,

the few number of cases relied on by defense, the simplicity of the problem, and the brevity of defense's response, an award of $5,546.25 seems very high on these facts. Indeed, if we were generally enthusiastic about sanctions it could be argued that the defense's claim for such a sum for this simple oversight problem is itself sanctionable.

We have asked district courts in cases involving substantial awards to state with some specificity the manner in which the attorneys' fees were calculated. *Brown v. Federation of State Medical Boards*, 830 F.2d 1429, 1438–39 (7th Cir.1987). In *Brown* we explained that substantial awards include awards involving large sums of money as well as awards that are large in relation to the sanctioned conduct. *Id.* The district court did not make the specific findings necessary to support a substantial award. In calculating attorneys' fees a district court should determine the reasonable number of hours expended and the reasonable hourly rate for such expenditures. *Harman v. Lyphomed, Inc.*, 945 F.2d 969 (7th Cir.1991). The district court in this case made no findings regarding the reasonableness of the hourly input or the reasonableness of the hourly rate. Nor did the district court make any other specific findings justifying the amount of this award. It is very difficult to review awards in the absence of such findings.

In light of the discretion that we generally give to a district court's determination of what constitutes an appropriate award of attorneys' fees, we might have affirmed the district court if the order contained specific findings with regard to the reasonableness of this fee. But, in the absence of such findings, we conclude that the district court abused its discretion in awarding $5,546.25 on these facts.

When evaluating an award of attorney sanctions under Rule 11, this court has held that a "court may impose a penalty as light as a censure and as heavy as is justified...." *Frantz v. United States Powerlifting Federation*, 836 F.2d 1063, 1066 (7th Cir.1987). This principle can also be

applied to section 1927 penalties. Considering that Chalmers did not have much hope of blocking the plaintiff's jury request, and considering that the failure to make this request was unintentional, sanctions in this case should be more in the nature of a censure. For this reason, an award of $1,000.00 is appropriate on these facts.[2]

### III.

For the above reasons, we affirm the district court's order to award attorneys' fees under section 1927. However, we find that the district court abused its discretion in awarding an excessive fee on these facts. Therefore, we modify the district court award of $5,546.25 by imposing in its place an award of $1,000.00 in sanctions.

AFFIRMED IN PART AND MODIFIED IN PART.

---

**2.** We normally remand for further findings when a district court fails to make sufficient factual findings to support a substantial award of attorney's fees. However, the amount in dispute on remand would be a few thousand dollars. Considering the amount of judicial resources that have already been expended in reviewing this issue, and considering that it may cost more than the few thousand dollars at stake for courts and counsel to address this issue on remand, we will not remand.