**NOT FOR PUBLICATION**

In the

United States Court of Appeals

For the Eleventh Circuit

————————————————

No. 25-11270

————————————————

STARPRO, GREENS, INC.,
   a Georgia Corporation,
DANIEL E. SELTON,

                                                  *Plaintiffs-Appellants,*

*versus*

POLYLOOM CORPORATION OF AMERICA,
   a Delaware Corporation,
   a.k.a. TenCate North America,
   a.k.a. GreenFields,
CHALLENGER TURF, INC.,
   a Georgia Corporation,

                                                  *Defendants-Appellees.*

————————————————

Appeal from the United States District Court
for the Northern District of Georgia
D.C. Docket No. 4:23-cv-00282-WMR

————————————————

Before JORDAN, JILL PRYOR, and KIDD, Circuit Judges.

2                    Opinion of the Court                    25-11270

PER CURIAM:

StarPro, Greens, Inc. and Daniel Selton appeal the district court's Rule 12(b)(6) dismissal of their claims against Polyloom Corporation of America and Challenger Turf, Inc., for alleged monopolization and attempted monopolization in violation of the Sherman Act, 15 U.S.C. § 2; breach of the duty of good faith, fair dealing, and loyalty; and breach of warranty. Our review is plenary. *See, e.g., Dorman v. Aronofsky*, 36 F.4th 1306, 1312 (11th Cir. 2022). The question is whether the appellants set out sufficient allegations to plausibly plead these particular claims for relief. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007).[1]

Following oral argument and a review of the record, we affirm largely based on the analysis set out in the district court's order. Because we write for the parties, we assume their familiarity with the record and set out only what is necessary to explain our decision.

**I**

With respect to the Sherman Act claims, it is "well settled that '[a] unilateral refusal to deal is [generally] not unlawful.'" *Duty Free Americas, Inc. v. Estee Lauder Companies, Inc.*, 797 F.3d 1248, 1265 (11th Cir. 2015) (citation omitted). At the pleading stage, a claim of refusal to deal in violation of § 2 of the Sherman Act requires,

---

[1] The appellants do not challenge the dismissal of their other claims on appeal. Those claims are therefore abandoned. *See Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 680–81 (11th Cir. 2014).

among other things, a plausible allegation that the defendant "possess[ed] . . .  monopoly power in the relevant market," as well as "'[its] willful acquisition or maintenance of that power as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident.'" *Verizon Comm., Inc. v. Law Offices of Curtis V. Trinko, LLP*, 540 U.S. 398, 407 (2004) (citation omitted).  Similarly, with respect to the attempted monopolization claim, a Sherman Act plaintiff must plausibly allege "a dangerous probability that the defendant might have succeeded in its attempt to achieve monopoly power."  *United States Anchor Mfg., Inc. v. Rule Indus., Inc.*, 7 F.3d 986, 993 (11th Cir. 1993) (citing *Spectrum Sports, Inc. v. McQuillan*, 506 U.S. 447 (1993)).  That is, "the defendant must be close to achieving monopoly power." *Id.* at 994.

"Monopoly power is 'the power to raise prices to supra-competitive levels or . . . the power to exclude competition in the relevant market either by restricting entry of new competitors or by driving existing competitors out of the market.'" *Levine v. Cent. Fla. Med. Aff., Inc.*, 72 F.3d 1538, 1555 (11th Cir. 1996) (citation omitted). "Ordinarily, when determining whether a defendant has violated § 2 of the Sherman Act, we first determine the relevant market and then decide whether the defendant possessed monopoly power in that market."  *Morris Commc'ns Corp. v. PGA Tour, Inc.*, 364 F.3d 1288, 1295 (11th Cir. 2004).

As an initial matter, we have significant doubts that the appellants plausibly alleged there is a product market in master putting turf ("MPT") alone, separate from comparable golf putting turfs. "The reasonable interchangeability of use or the cross-elasticity of demand between a product and its substitutes constitutes the outer boundaries of a product market for antitrust purposes." *U.S. Anchor Mfg.*, 7 F.3d at 995 (citing *Brown Shoe Co. v. United States*, 370 U.S. 294, 325 (1962)). *See also Levine*, 72 F.3d at 1552 ("The market is composed of products that have reasonable interchangeability.") (internal quotation marks and citations omitted).

The complaint alleges that the relevant product market is comprised of "artificial putting surfaces constructed from nylon synthetic artificial turf fibers tufted into a[n] [embossed rubber] backing in a cross- over stitched manner to produce a putting surface with a stimp value of between 9.5 to 11 as measured using standard practices for the do-it-yourself installer." D.E. 13 at ¶ 124. There are vague allegations that this product (i.e., MPT) is higher priced and "unique" relative to general putting turfs because of its cross-stitching. *See id.* at ¶¶ 22, 128–29, 131. But as we reasoned *in Jacobs v. Tempur-Pedic Int'l, Inc.*, 626 F.3d 1327, 1337 (11th Cir. 2010), "allegations that [the specific product] [is] more expensive than traditional [products] and that [the specific product] ha[s] 'unique attributes' . . . . do not indicate the degree to which consumers prefer" that product relative to products in the broader market. For the same reasons we provided in *Jacobs*, the lack of allegations regarding "reasonable interchangeability" or "cross-elasticity of demand" between MPT and the turfs manufactured by the numerous

other manufacturers alluded to in the complaint seems to foreclose any plausible inference of a separate product market in MPT. *See id.* at 1337–38.

But even assuming that the appellants sufficiently pled the relevant market (both in terms of product, MPT, and geography, the Continental United States), the allegations in their complaint negate any plausible inference of monopoly power, willful acquisition of such power, or dangerous probability of achieving such power in that market by Polyloom and/or Challenger. For example, the complaint alleges that "North Georgia is replete with synthetic turf manufacturers that have the capabilities of manufacturing synthetic turf and associated synthetic border materials which includes synthetic lawn turf." D.E. 13 at ¶ 123. As the district court correctly explained, "any one of the myriad of 'synthetic turf manufacturers in the area could take business away from [Polyloom and Challenger] if those manufacturers chose to do so." D.E. 24 at 9.

That is all the more so because the complaint does not allege that there are any patents on MPT that would preclude entry of these other manufacturers into the market. Indeed, the complaint itself alleges that a new company not only had the ability to develop MPT but actually approached Mr. Selton about doing so: "In the later part of 2022, David Calhoun, the former VP of Sales and Manufacturing [at Challenger] now at a new company *with the alleged capabilities of developing MPT putting turf* approached Dan Selton to inquire if [he] was interested in this new company and the

possibility of trying to recreate th[e] MPT." D.E. 13 at ¶ 88 (emphasis added). And, as the district court observed, another unnamed company previously made MPT and allegedly simply chose to stop selling it to StarPro. *See id.* at ¶¶ 21, 26.

At base, the appellants' theory is that Challenger and Polyloom acquired a monopoly "through the elimination of StarPro as a supplier of . . . MPT." *Id.* at ¶ 82. But one manufacturer's refusal to deal with a specific distributor demonstrates nothing about the presence, market share, or capacity of other manufacturers in the alleged MPT market. The only allegations in the complaint related to competition in the MPT market indicate that, *just within North Georgia,* there were two unnamed companies, the first of which had manufactured MPT and the second of which allegedly had the capacity to develop MPT, who either did or could have competed in the MPT market. We agree with the district court that the allegations fail to produce any plausible inference that Challenger and Polyloom had or were close to obtaining monopoly power across the entire Continental United States in the manufacturing of MPT.[2]

Because the complaint fails to plausibly allege monopoly power, willful acquisition thereof, or dangerous probability of

---

[2] Although the district court determined that the appellants failed to adequately allege a product market in MPT alone, the last portion of its analysis indicates that even within the alleged MPT market, the allegations "fall short of stating a plausible claim that Defendants are monopolizing or attempting to monopolize th[at] market," due to the alleged presence of potential competitors. *See* D.E. 24 at 9.

achieving such power by Challenger and Polyloom, we affirm the dismissal of the Sherman Act claims.

## II

We also discern no error in the district court's dismissal of the appellants' state law claims.[3]

First, although we agree with the appellants that under Georgia law a partnership may be created through an oral agreement, *see, e.g., Baker v. Schneider*, 80 S.E.2d 783, 785 (Ga. 1954) ("A partnership may be created by parol contract."), the complaint does not set out sufficient allegations to plausibly plead the existence of a partnership between the appellants, Polyloom, and Challenger. There are no allegations that the parties agreed to share in the risks, expenses, and profits and losses of the venture. *See Rosenfeld v. Rosenfeld*, 648 S.E.2d 399, 402 (Ga. App. 2007); O.C.G.A. § 14-8-7(4). Indeed, according to the complaint StarPro would incur no costs until a sale was made. Challenger simply charged StarPro for the price of the MPT it manufactured to satisfy a particular purchase order. *See* D.E. 13 at ¶¶ 40, 53.

The complaint repeatedly refers to the relationship between the parties as a partnership, but "we afford no presumption of truth to legal conclusions." *Duty Free Americas*, 797 F.3d at 1262 (quotation marks and citation omitted). Because there are no allegations

---

[3] "[W]e can affirm the district court's judgment on any ground supported by the record[.]" *United States v. Gill*, 864 F.3d 1279, 1280 (11th Cir. 2017).

that the parties shared any risks, expenses, profits, or losses—as opposed to operating within a traditional manufacturer-distributor relationship, through which Challenger supplied MPT to StarPro, a customer, at a specified cost per unit—the appellants did not plausibly allege the existence of a partnership. As a result, their claim for breach of the duty of good faith, fair dealing, and loyalty owed by one partner to another, which depends on the existence of a plausibly alleged partnership, fails.

Second, under the facts alleged in the complaint the breach of warranty claim fails as well. The complaint alleges that sometime in 2023 the appellants received from Challenger putting turf that was not the agreed-upon MPT and was substandard because, among other things, the fibers were not cross-stitched. *See* D.E. 13 at ¶¶ 94–100. Mr. Selton inspected the delivered products and, despite discovering the non-conformity of the goods, accepted them, and the appellants then distributed them to StarPro's customers. *See* D.E. 13 at ¶¶ 99–103.

Under O.C.G.A. § 11-2-607(3)(a), "a buyer who has accepted nonconforming goods can recover damages for breach of warranty if the buyer notifies the seller of defects in those goods within a reasonable time after discovery; otherwise it is barred from any remedy." *Wal-Mart Stores, Inc. v. Wheeler*, 586 S.E.2d 83, 84 (Ga. App. 2003). *See also* O.C.G.A. § 11-2-607(3)(a) ("Where a tender has been accepted[,] . . . [t]he buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller

of breach or be barred from any remedy."). According to the complaint, the appellants did not inform Polyloom or Challenger of the nonconformities at or around the time of Mr. Selton's inspection, when he discovered that the turf was nonconforming. Instead, the appellants notified Polyloom and Challenger only after they accepted the nonconforming turf, sold it to customers, and then those customers complained about the performance of the final product. *See* D.E. 13 at ¶¶ 99–106. Having failed to notify Polyloom and Challenger within a reasonable time after the appellants discovered the alleged breach, this claim was properly dismissed as well.

Resisting this conclusion, the appellants contend that the allegations demonstrate that they did not know of the specific defect that constituted the alleged breach—i.e., the deterioration of the nylon fibers—until after the inspection; therefore, their breach of warranty claim should have survived the motion to dismiss because notice was timely. Charitably read, the appellants appear to contend that the district court, in applying O.C.G.A. § 11-2-607(3)(a), should have considered their delay in notifying Polyloom and Challenger not by reference to the date they discovered that the goods were generally nonconforming (i.e., the date of Mr. Selton's inspection), but by reference to the date they discovered a specific defect in those nonconforming goods (i.e., the later date on which they received complaints from customers). And if we do so, they seem to assert, the complaint adequately alleges that Polyloom and Challenger were notified within a reasonable time.

The appellants, however, offer no argument about what constitutes a "reasonable time" and do not provide a single citation to statutory authority or case law in support of their contention. They have therefore waived this issue on appeal. *See Continental Tech. Servs., Inc. v. Rockwell Int'l Corp.*, 927 F.2d 1198, 1199 (11th Cir. 1991) ("[An] issue raised perfunctorily without citation to authority constitutes waiver of [the] issue.") (citing *Ordower v. Feldman*, 826 F.2d 1569, 1576 (7th Cir. 1987)); *Doe v. Moore*, 410 F.3d 1337, 1349 n.10 (11th Cir. 2005) ("On appeal, we require appellant to not only state their contentions to us, but also to give 'the reasons for them, with citations to authorities . . . on which the appellant relies.'") (quoting Fed. R. App. P. 28(a)(9)(A)).

## III

We affirm the district court's dismissal of the appellants' claims for refusal to deal (monopolization and attempted monopolization under § 2 of the Sherman Act); breach of the duty of good faith, fair dealing, and loyalty predicated on the existence of a partnership; and breach of warranty.

**AFFIRMED.**