**UNITED STATES of America, Plaintiff,**

**Freda Brown, Jennifer Brown by her next friend Freda Brown, Evin Brown by his next friend Freda Brown, the Metropolitan Milwaukee Fair Housing Council, Inc., Freddie Holland, Kevin Tate, Greg Thompson, Richard Strode, Johnnie Kimble, and Charles Collins, Plaintiff-Intervenors,**

**Edna Barnett, Theresa Barnett, and Drexella Ward, Plaintiff-Intervenors,**

**v.**

**GRITZ BROTHERS PARTNERSHIP d/b/a Gritzmacher Realty, Dennis Gritzmacher, and Harold Gritzmacher, Defendants.**

No. 93-C-283.

United States District Court,
E.D. Wisconsin.

April 28, 1994.

James P. Turner, Acting Asst. Atty. Gen., and Isabelle M. Thabault and Diane L. Houk, Housing and Civ. Enforcement Section, Dept. of Justice, Washington, DC, for plaintiff.

Michael, Best & Friedrich by Gary A. Ahrens, Milwaukee, WI, for defendants.

## DECISION and ORDER

MYRON L. GORDON, District Judge.

The United States commenced this action on March 22, 1993, against Gritz Brothers Partnership d/b/a Gritzmacher Realty, Dennis Gritzmacher and Harold Gritzmacher [collectively, "the defendants"], to enforce Title VIII of the Civil Rights Act of 1968 (the "Fair Housing Act"), as amended by the Fair Housing Amendments Act of 1988, 42 U.S.C. § 3601 *et seq.* In its complaint, the United States alleges that the defendants "engaged in a pattern or practice of discrimination against persons in the rental of dwellings on the basis of race in violation of the Fair Housing Act." Among other relief requested, the United States seeks "a civil penalty against the defendants in an amount of mon-ey authorized by 42 U.S.C. § 3614(d)(1)(C), in order to vindicate the public interest."

Subsequent to the filing of the government's complaint, three different sets of plaintiff-intervenors filed complaints in intervention. On October 13, 1993, the defendants settled completely with two of the three sets of plaintiff-intervenors. The remaining set of plaintiff-intervenors also settled with the defendants on October 13, 1993, except for a dispute over attorneys fees and costs that this court has since resolved. *See United States of America, et al. v. Gritz Brothers Partnership, et al.,* No. 92–C–283 (March 7, 1994). Thus, only the United States and the defendants remain parties to this action. A bench trial is set to begin on June 6, 1994.

There are ten motions presently pending in this action. This decision and order will address only the defendants' February 11, 1994, motion for sanctions (docket entry # 105) and two related motions filed by the defendants, namely, the defendants' March 15, 1994, "Motion to Strike the Declaration of Diane L. Houk Dated March 4, 1994" (docket entry # 113) and the defendants' March 22, 1994, "Motion to Strike the Amended Declaration of Diane L. Houk" (docket entry # 117).

The defendants' motion for sanctions and their March 22, 1994, motion to strike will be denied. The defendants' March 15, 1994, motion to strike will be dismissed as moot. The other pending motions in this action will be addressed by the court in a subsequent decision.

## I. BACKGROUND

Although the United States has not settled with the defendants, the parties have endeavored to settle this law suit. On October 14, 1993, prior to this branch of the court receiving this case by random reassignment, Judge John W. Reynolds presided over a settlement conference between counsel for the United States and counsel for the defendants. At the settlement conference, Judge Reynolds was informed that the defendants had agreed in principle to certain injunctive relief requested by the United States and that the

only roadblock to a complete settlement of the action was a disagreement over the amount of money that the defendants should be required to pay the government, pursuant to 42 U.S.C. § 3614(d)(1)(C), as a civil penalty for the defendants' alleged Fair Housing Act violations. *See* October 14, 1993, Transcript of Oral Argument/Settlement Conference [hereinafter "Tr."], at 25–26, 36–37.

Section 3614(d)(1)(C) of Title 42 provides, in part, that "[i]n a civil action under subsection (a) or (b) of this section, the court ... may, to vindicate the public interest, assess a civil penalty against the respondent ... in an amount not exceeding $50,000, for a first violation...." Counsel for the United States advised Judge Reynolds that it was seeking a $50,000 civil penalty against Dennis Gritzmacher and a $25,000 civil penalty against Harold Gritzmacher. Tr. 46. Counsel for the defendants contended that no civil penalty was required for the defendants' alleged violations of the Fair Housing Act or, in the alternative, that such a penalty should be substantially less than the amount sought by the government. Tr. 25, 32–33.

The presentations by counsel to Judge Reynolds at the October 14, 1993, settlement conference focused on the factors that a court should consider in determining the proper amount of a civil penalty for violations of the Fair Housing Act so that Judge Reynolds could evaluate the respective positions of the parties and recommend what he believed to be an appropriate and fair settlement figure to counsel.

Mr. Gary Ahrens, an attorney for the defendants, made the following comments to Judge Reynolds at the settlement conference:

> [W]e are only at this point talking about whether a civil penalty is appropriate, that's the only thing, and if appropriate, at what amount....
>
> There is ... at least one case that says ... the maximum [civil] penalty is meant to be a maximum. It's not meant to be imposed ordinarily without examination of the facts and mitigating circumstances. The Seventh Circuit in the *Balistrieri* case before it remanded the case to the district court vacated the civil penalty imposition

so that the trial court on remand could weigh the imposition of a civil penalty in the light of whatever punitive damages were awarded.

> I think that we can take from that a kind of a linking of the two and that the purpose of the two if not precisely the same are very much the same. I had a course in criminology once and it was said that the purposes of punishments are reaffirmation of social values, deterrence, isolation and rehabilitation. Now isolation is not an option here because nobody's going to jail, okay? But reaffirmation of social values, we impose a penalty because we want to reaffirm that we think things are important; deterrence we want to show other folks that it can be costly; and, finally, rehabilitation.
>
> So I think that those three purposes here are purposes for a penalty.

Tr. 25–26.

Ms. Diane Houk, an attorney for the United States, made the following statements to Judge Reynolds, among others, concerning the civil penalty scheme of 42 U.S.C. § 3614(d)(1)(C):

> The Federal Fair Housing Act was amended in 1988 and in that amendment was for the first time the creation of civil penalties. The legislative history of that amendment sets forth the six factors that should be determined and reviewed in deciding how much—whether [a] civil penalty should be ordered and how much.
>
> . . . .
>
> ... [The] penalty scheme within the statute is that the civil penalty should indemnify the government for its costs in pursuing the litigation at whatever point there is resolution. So for today we would be looking at what have the costs been to the United States in terms of attorney time and expenses for the investigation and the litigation to date.
>
> . . . .
>
> So my estimate at this point is it would be approximately $20,000 worth of attor-

ney time and costs that have been expended from the government.

Tr. 37, 43–44.

After the respective presentations of counsel and separate private meetings between Judge Reynolds and the attorneys for the United States and the defendants, Judge Reynolds asked counsel to recommend to their respective clients a settlement in which the defendants would submit to the injunctive relief requested by the government and would jointly pay the United States $35,000 as a civil penalty. Tr. 51–52. Counsel for the United States and the defendants departed the settlement conference agreeing to recommend to their clients the terms of Judge Reynolds' proposed settlement. Tr. 52.

On November 2, 1993, however, Mr. Ahrens wrote a letter to Judge Reynolds requesting that he be released from his promise to recommend to his clients the $35,000 civil penalty portion of the settlement proposed by Judge Reynolds. The basis for Mr. Ahrens request was his contention that Ms. Houk's remarks at the settlement conference concerning the government's entitlement to recover attorneys fees and costs as part of a civil penalty pursuant to 42 U.S.C. § 3614(d)(1)(C) were incorrect.

Mr. Ahrens pointed out in his letter that 42 U.S.C. § 3614(d)(2) expressly provides that, "[i]n a civil action under this section, the court, in its discretion, may allow the prevailing party, *other than the United States,* a reasonable attorney's fee and costs" (emphasis added). Thus, Mr. Ahrens stated that he believed his promise to recommend Judge Reynolds' settlement to his clients, and indeed the court's settlement recommendation itself, "to have been affected by a misstatement of the law." *Docket Entry # 76,* November 2, 1993, letter at 6. Mr. Ahrens concluded his letter as follows:

Accordingly, I request the Court [to] release me from my promise to recommend the settlement to my clients and request that the Court reconvene the settlement conference based on the fact that indemnification of the government for its costs and attorneys' fees is not a factor which may be considered in imposing a civil penalty for violation of the Fair Housing Act.

*Id.* at 6.

The government responded to Mr. Ahrens' letter by filing its own letter to Judge Reynolds on November 8, 1993. In that letter Ms. Houk elaborated on the government's position taken during the October 14, 1993, settlement conference. In her letter she stated that:

*It is the United States' position that the sixth factor contained in the legislative history of Title VIII, "other matters as justice may require," includes consideration of the investigative and litigation resources expended by the United States.* Such a consideration has been accepted by federal courts as a legitimate factor when determining the amount of a civil penalty. While the assessment of a civil penalty has a punitive component, one of its distinguishing characteristics from punitive damages is to provide compensation to the government for its enforcement expenses. See *United States v. Halper,* 490 U.S. 435, 452 [109 S.Ct. 1892, 1903, 104 L.Ed.2d 487] (1988) [1989]; *United States ex rel. Marcus v. Hess,* 317 U.S. 537, 551–52 [63 S.Ct. 379, 387–88, 87 L.Ed. 443] (1943) (civil penalties may reimburse the government, *inter alia,* for "the costs of detection and investigation"); *Helvering v. Mitchell,* 303 U.S. 391, 401 [58 S.Ct. 630, 634, 82 L.Ed. 917] (1938) (civil penalties reimburse government for the costs of litigation); *Stockwell v. United States,* 80 U.S. (13 Wall.) 531, 547, 551 [20 L.Ed. 491] (1871).

*Docket Entry # 80,* November 8, 1993, letter at 2 (emphasis added).

On December 10, 1993, Judge Reynolds issued an order granting Mr. Ahrens' November 2, 1993, letter motion to be released from his promise to recommend the $35,000 settlement figure to his clients. *See United States of America et al. v. Gritz Brothers Partnership, et al.,* No. 92–C–283, slip op. at 2 (December 10, 1993). In his order, Judge Reynolds stated that "Because the court in making its [settlement] recommendation *did in fact operate on the assumption that the government could recover costs and attorney's fees* as part of its award, and the

assumption was used to persuade the defendants' counsel to recommend the settlement, the court will relieve attorney Ahrens of his agreement." *Id.* at 2 (emphasis added). Judge Reynolds, however, denied Mr. Ahrens' request to reconvene the settlement conference.

On December 7, 1993, the defendants filed a motion to strike this action from the jury calendar since the government had not demanded a jury trial and the parties that had done so, the plaintiff-intervenors, had settled with the defendants. On December 23, 1993, Judge Reynolds ordered that this action would be tried to the court and not before a jury, and had this action reassigned to another judge. This branch of the court received this action on December 27, 1993.

On February 11, 1994, the defendants filed a motion for sanctions against the government and Ms. Houk. Specifically, the defendants have moved for:

> [A]n order allowing them to recover from Diane Houk and the United States the sum of $3,444.35 as their attorneys' fees and expenses reasonably and necessarily incurred to correct the effects of statements misrepresenting that the Fair Housing Law allowed the Government a recovery of fees and costs which statements were made to the Court during the October 14, 1993 settlement conference by Attorney Diane L. Houk of the United States Justice Department.

*Defendants' Motion for Sanctions,* at 1. The defendants also request reimbursement for their fees and costs associated with filing their motion for sanctions. *Id.*

The government filed a brief in opposition to the defendants' motion for sanctions on March 7, 1994, along with a copy of the transcript of the October 14, 1993, settlement conference, and a document captioned "Declaration of Diane L. Houk." On March 15, 1994, along with its reply brief in support of its motion for sanctions, the defendants filed a "Motion to Strike the Declaration of Diane L. Houk Dated March 4, 1994" alleging that it failed to comply with the requirements of 28 U.S.C. § 1746(2) in that it was not subscribed to by Ms. Houk "as true under penalty of perjury."

In response to the defendants March 15, 1994, motion to strike, the government filed a "Notice of Errata and Response to Motion to Strike Declaration of Diane L. Houk" and a corrected "Declaration of Diane L. Houk" that complied with the requirements of 28 U.S.C. § 1746(2). Accordingly, the government requested the court to dismiss the defendants' March 15, 1994, motion to strike as moot in light of Ms. Houk's corrected declaration remedying the error in her March 4, 1994, declaration.

On March 22, 1994, the defendants filed a "Motion to Strike the Amended Declaration of Diane L. Houk." In that motion, the defendants argue that the court should strike the corrected declaration of Ms. Houk because it was filed after the deadline for filing a response to the defendants' motion for sanctions.

## II. ANALYSIS

■ I turn first to the defendants two respective motions to strike which can be disposed of summarily. The defendants' "Motion to Strike the Declaration of Diane L. Houk Dated March 4, 1994" will be dismissed as moot because the government has filed a corrected "Declaration of Diane L. Houk" that complies with the requirements of 28 U.S.C. § 1746. The defendants' "Motion to Strike the Amended Declaration of Diane L. Houk" will be denied because Ms. Houk's original declaration, which contained the error subsequently corrected by the government, was timely filed.

■ The defendants' motion for sanctions cannot so readily be resolved. In the first portion of the defendants' motion for sanctions, the defendants seek sanctions against the *United States* based on Ms. Houk's alleged misstatements of the law at the October 14, 1993, settlement conference. They ground this demand for sanctions on the "inherent powers" of the court to impose such sanctions. *See Chambers v. NASCO, Inc.,* 501 U.S. 32, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991).

In *Chambers,* the Supreme Court concluded that a court may assess attorneys fees

against *a party* who has " 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons' " or "if a court finds 'that fraud has been practiced upon it, or that the very temple of justice has been defiled.' " *Chambers*, 501 U.S. at 46, 111 S.Ct. at 2133 (citations omitted). *Chambers* involved a litigant whose sanctionable conduct, as well as that of his attorneys, included (1) engaging in tactics to deprive the court of jurisdiction by acts of fraud (e.g. creating an eleventh hour trust to place property beyond the reach of the court); (2) filing false and frivolous pleadings, and (3) attempting to reduce the defendant to exhausted compliance through tactics of delay, oppression, harassment and massive expense. *Id.* 501 U.S. at 35–42, 111 S.Ct. at 2128–31.

I find that Ms. Houk's statements (whether accurate or not) at the October 14, 1993, settlement conference do not even come close to violating the bad faith standard of *Chambers*. In my opinion, unlike the unethical tactics described in *Chambers*, there is no evidence that the United States, through Ms. Houk, "acted in bad faith, vexatiously, wantonly, or for oppressive reasons" at the October 14, 1993, settlement conference or that a fraud was practiced upon the court by the United States. In my opinion, the United States should not be sanctioned because of Ms. Houk's statements to Judge Reynolds at the October 14, 1993, settlement conference.

■ In the second portion of the defendants' motion for sanctions, the defendants seek sanctions against *Ms. Houk in her personal capacity* stemming from her alleged misstatements of the law at the October 14, 1993, settlement conference. The defendants ground this portion of their motion for sanctions on 28 U.S.C. § 1927. That statute provides (emphasis added):

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously *may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.*

Whether to grant or deny the defendants' motion for sanctions against Ms. Houk in her

personal capacity pursuant to 28 U.S.C. § 1927 is within the sound discretion of the district court. *Ross v. City of Waukegan*, 5 F.3d 1084, 1089 n. 6 (7th Cir.1993). Furthermore, the court has discretion to determine the amount of any sanction awarded pursuant to 28 U.S.C. § 1927. *Ordower v. Feldman*, 826 F.2d 1569, 1575–76 (7th Cir.1987).

■ If a legal theory advanced by an attorney is objectively colorable, then the party seeking sanctions pursuant to 28 U.S.C. § 1927 against that attorney must demonstrate subjective bad faith or malice on the part of that attorney to obtain sanctions. *See In re TCI Ltd.*, 769 F.2d 441, 445 (7th Cir.1985). In other words, sanctions are appropriate when an attorney pursues an objectively colorable legal theory solely to impose costs on the other side rather than to improve the client's chances of recovery. *Id.* On the other hand, if a legal theory is objectively colorable but is pursued for legitimate reasons, sanctions may be inappropriate even when the court ultimately rejects such a legal theory. *See Overnite Transp. Co. v. Chicago Indus. Tire Co.*, 697 F.2d 789, 790–94 (7th Cir.1983). This is especially true where the legal issue has never been litigated before and is one of first impression. *Id.* at 794.

■ If a legal theory advanced by an attorney is objectively not colorable, then a court may impose sanctions on the attorney if the court finds that the attorney's conduct was reckless, indifferent to the law, or extremely negligent even though the attorney's actions were without actual or subjective bad faith. *See Kotsilieris v. Chalmers*, 966 F.2d 1181, 1184–85 (7th Cir.1992). However, sanctions are not appropriate for mere ordinary negligence. *Id.* Stated another way, a court may impose sanctions under 28 U.S.C. § 1927 against an attorney where the attorney has "acted in an objectively unreasonable manner by engaging in a 'serious and studied disregard for the orderly process of justice' ... or where a 'claim [is] without a plausible legal or factual basis and lacking in justification.' " *Walter v. Fiorenzo*, 840 F.2d 427, 433 (7th Cir.1988) (citations omitted).

From the foregoing analysis, it appears that the threshold issue in resolving the de-

fendants' request for sanctions against Ms. Houk in her personal capacity is whether her contention made at the October 14, 1993, settlement conference, that any civil penalty imposed against the defendants pursuant to 42 U.S.C. § 3614(d)(1)(C) should indemnify the United States for its attorneys fees and costs in enforcing the Fair Housing Act, is objectively a colorable legal theory. The defendants contend that such a legal argument is not objectively colorable, that Ms. Houk's conduct in making such an argument to the court was reckless, and that such conduct warrants a sanction. The United States argues, on the other hand, that Ms. Houk's legal argument was objectively colorable, that there is no evidence of subjective bad faith on her part in making such an argument, and that her conduct does not merit a sanction.

The parties agree that there is no federal case law discussing the factors that courts should consider in determining the amount of a civil penalty pursuant to 42 U.S.C. § 3614(d)(1)(C) for Fair Housing Act violations. Correspondingly, the parties also agree that there is no federal case law addressing the *precise issue* of whether the civil penalty authorized by 42 U.S.C. § 3614(d)(1)(C) should indemnify the United States for its attorneys fees and costs expended in enforcing the Fair Housing Act. Consequently, at the October 14, 1993, settlement conference, Ms. Houk relied on the legislative history of 42 U.S.C. § 3614(d)(1)(C), bolstered by a Supreme Court case, *United States v. Halper*, 490 U.S. 435, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989), involving the False Claims Act, 31 U.S.C. § 3729 *et seq.*, and some HUD administrative law decisions, to support her contention that the civil penalty authorized by 42 U.S.C. § 3614(d)(1)(C) should indemnify the United States for its attorneys fees and costs expended in enforcing the Fair Housing Act.

Ms. Houk's comments at the settlement conference strongly implied that one of the six factors discussed in the legislative history of 42 U.S.C. § 3614(d)(1)(C) explicitly provides that the civil penalty authorized by 42 U.S.C. § 3614(d)(1)(C) should indemnify the government for its actual attorneys fees and costs in enforcing the Fair Housing Act. *See* Tr. 37–38, 43–44. In fact, Ms. Houk went so far as to provide the court with a $20,000 estimate of the government's actual attorneys fees and costs expended in this action through October 14, 1993. *See* Tr. 44. Thus, the upshot of Ms. Houk's presentation at the settlement conference was that Judge Reynolds was obligated to consider the government's estimated $20,000 in fees and costs in determining what would be a fair civil penalty for the defendants to pay the government to settle this law suit. However, there is scant support for Ms. Houk's position in the legislative history of 42 U.S.C. § 3614(d)(1)(C).

The House Report on the 1988 Fair Housing Amendments Act provides that:

When determining the amount of a [civil] penalty [pursuant to 42 U.S.C. 3614(d)(1)(C) ] against a defendant the court should consider the nature and circumstances of the violation, the degree of culpability, any history of prior violations, the financial circumstances of that defendant and the goal of deterrence, and *other matters as justice may require.*

*Judiciary Comm., Fair Housing Amendments Act of 1988, H.Rep. No. 100–711,* 100th Cong., 2d Sess. 40 (1988), *reprinted in* 1988 U.S.C.C.A.N. 2173, 2201 (emphasis added). In my opinion, the literal language of House Report 100–711 clearly does not provide much support for Ms. Houk's position as presented to Judge Reynolds at the October 14, 1993, settlement conference.

Not surprisingly, since the October 14, 1993, settlement conference, Ms. Houk has attempted to clarify her less than precise articulation of the legislative history of 42 U.S.C. § 3614(d)(1)(C) that she presented to Judge Reynolds at the settlement conference. Specifically, she now contends, as she also did in her November 8, 1993, letter to Judge Reynolds in response to Mr. Ahrens' November 2, 1993, letter to him, that it is the position of the United States:

"[T]hat the sixth factor contained in the legislative history of Title VIII, "other matters as justice may require," includes consideration of the investigative and litigation resources expended by the United

States [in enforcing the Fair Housing Act]."

***United States' Brief in Opposition to Defendants' Motion for Sanctions,*** at 10.

I find Ms. Houk's subsequent clarification of her statements made at the October 14, 1993, settlement conference to be unimpressive because the transcript from that conference reveals that Ms. Houk never made any reference whatsoever to the catch-all language "other matters as justice may require" found in House Report 100–711. Nor did she state that the legislative history of 42 U.S.C. § 3614(d)(1)(C) merely warranted "consideration of the investigative and litigation resources expended by the United States [in enforcing the Fair Housing Act]." To the contrary, her comments at the conference strongly implied that one of the six factors listed in the legislative history of the Fair Housing Amendments Act of 1988 is that the civil penalty authorized by 42 U.S.C. § 3614(d)(1)(C) should indemnify the government for its attorneys fees and costs in enforcing the Fair Housing Act.

Notwithstanding her legal concoction, Ms. Houk is entitled to the benefit of the doubt in light of the time constraints she was under in preparing for the settlement conference and the fact that defendants' counsel appeared no more prepared on this legal issue than she. This is demonstrated by the fact that neither lawyer called to the court's attention the erroneous nature of her settlement conference remarks at the time they were made. Accordingly, I will accept at face value her clarification of her settlement conference remarks.

I find Ms. Houk's conclusion that courts must consider the investigative and litigation resources expended by the United States in enforcing the Fair Housing Act when determining the amount of a civil penalty pursuant to 42 U.S.C. § 3614(d)(1)(C) to be an objectively colorable legal argument by the narrowest of margins. However, I believe the foundation for her argument to be grounded on an overbroad reading of *United States v. Halper* and an administrative law decision cited by her, and, most importantly, it is entirely inconsistent with other statutory sections of the 1988 Fair Housing Amendments

Act and the legislative history to those sections.

Ms. Houk relies heavily on the authority of *United States v. Halper*, 490 U.S. 435, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989), the Supreme Court case she alluded to without naming it, during her comments at the October 14, 1993, settlement conference, and other Supreme Court cases cited in *Halper*, to support her interpretation of the legislative history of 42 U.S.C. § 3614(d)(1)(C). I do not find Ms. Houk's reliance on *Halper* or any of the cases cited therein to be persuasive.

*Halper* involved an action by the government against Irwin Halper for sixty-five separate violations of both the criminal false-claims statute, 18 U.S.C. § 287, and the civil False Claims Act, 31 U.S.C. §§ 3729–3731. *Halper*, 490 U.S. at 437–38, 109 S.Ct. at 1895–96. At the time of Halper's alleged violation of the civil False Claims Act, it provided, in part, that "[a] person ... is liable to the United States Government for a civil penalty of $2,000, an amount equal to 2 *times the amount of damages* the Government sustains because of the act of that person, and *costs* of the civil action, if the person ... knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved." 31 U.S.C.A. § 3729 (West 1983) (emphasis added).

Mr. Halper was convicted under the criminal false claims statute prior to the civil charges against him in which he was subsequently found to be liable. *Halper*, at 437–38, 109 S.Ct. at 1895–96. Thus, "having violated the Act 65 times, Halper ... appeared to be subject to a statutory penalty of more than $130,000." *Id.* at 438, 109 S.Ct. at 1896.

The principal issue in *Halper* was whether the $130,000 civil penalty against Mr. Halper constituted a second punishment for purposes of the double jeopardy clause. The Supreme Court held that a disproportionately large civil penalty could constitute a second punishment in violation the double jeopardy clause in certain circumstances where a defendant has already been convicted of a crime. *Id.* at 452, 109 S.Ct. at 1903. In my

opinion, that holding is not relevant to the matters at issue in this action. However, *Halper* also stands for the *narrow* proposition that under the civil False Claims Act, the government may attempt to recover its "actual costs" in bringing a False Claims Act suit as part of the civil penalty scheme of that act. *See id.* Following from this holding, Ms. Houk argues that *Halper* supports her reading of the legislative history to 42 U.S.C. § 3614(d)(1)(C), namely, that courts must consider "the investigative and litigation resources" expended by the United States in enforcing the Fair Housing Act when determining the amount of a civil penalty pursuant to 42 U.S.C. § 3614(d)(1)(C).

I find little merit to Ms. Houk's argument. In my opinion, Ms. Houk has read *Halper* far too broadly. I find nothing in *Halper* to support her contention that it stands for the general proposition that a component of *all* civil penalties, including those authorized by 42 U.S.C. § 3614(d)(1)(C), is the consideration of the expenditures by the United States on attorneys fees and costs in enforcing the laws of the United States. Therefore, I disagree with Ms. Houk's reliance on *Halper* to support her interpretation of the legislative history of 42 U.S.C. § 3614(d)(1)(C).

Ms. Houk also relies on an administrative law decision, *HUD v. Holiday Manor Estates Club,* 1991 WL 442792 (H.U.D.A.L.J. 1991), to support her reading of the legislative history of 42 U.S.C. § 3614(d)(1)(C). In that decision, Ms. Houk looks to the following language:

> Based upon a consideration of the factors directed by Congress, *including consideration of the manner in which the Government handled ... [the plaintiff's] ... complaint,* and to vindicate the public interest, I conclude that it is appropriate in this case to impose a civil penalty of $2,000
> ...

1991 WL 442792 at 20 (emphasis added). Ms. Houk argues that this language suggests that the government's "investigative and litigation resources" should be considered as a part of the civil penalty scheme built into the 1988 Fair Housing Amendments Act [i.e. 42 U.S.C. § 3612(g)(3) and 42 U.S.C.

§ 3614(d)(1) ]. I also find no merit to this argument.

In addition to finding Ms. Houk's reliance on *Halper* and *Holiday Manor Estates Club* to be misplaced, I find Ms. Houk's interpretation of the legislative history of 42 U.S.C. § 3614(d)(1)(C) to be inconsistent with other statutory sections of the Fair Housing Act as amended by the 1988 Fair Housing Amendments Act.

The 1988 Fair House Amendments Act explicitly provides that "[i]n a civil action under this section [i.e. 42 U.S.C. § 3614], the court, in its discretion, may allow the prevailing party, *other than the United States,* a reasonable attorney's fee and costs." 42 U.S.C. § 3614(d)(2) (emphasis added). Furthermore, the rule barring the United States a recovery of attorneys fees and costs that appears in 42 U.S.C. § 3614(d)(2) concerning fair housing enforcement actions commenced by the attorney general of the United States also appears in two other sections of the 1988 Fair Housing Amendments Act.

The United States may not recover its attorneys fees and expenses in fair housing enforcement actions commenced by the secretary of Health and Urban Development pursuant to 42 U.S.C. § 3612 or in actions brought by private persons under 42 U.S.C. § 3613 in which the government intervenes. *See* 42 U.S.C. § 3612(p) ("In any administrative proceeding brought under this section, or any court proceeding arising therefrom, or any civil action under this section, the administrative law judge or the court, as the case may be, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee and costs"); 42 U.S.C. § 3613(c)(2) ("In a civil action under subsection (a) of this section, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee and costs"). *See also* 24 C.F.R. § 104.940 (1993) (providing that in enforcement actions brought under 42 U.S.C. § 3612 "any prevailing party, except HUD, may apply for attorney's fees and costs").

In my opinion, sections 3612(p), 3613(c)(2), and 3614(d)(2) of Title 42 strongly suggest, contrary to Ms. Houk's position advanced

with respect to the legislative history of 42 U.S.C. § 3614(d)(1)(C), that Congress did not intend the United States to be able to recover its attorneys fees and expenses under any circumstances in connection with any type of fair housing actions brought pursuant to the 1988 Fair Housing Amendments Act. I reach this conclusion because the legislative history of those statutory sections indicates that the congressional purpose in allowing attorneys fees to prevailing parties other than the United States in fair housing actions is primarily to encourage private litigants, with limited financial resources, to bring housing discrimination actions as "private attorney generals." Additionally, such a congressional policy allows private litigants to intervene in housing discrimination actions commenced by the secretary of HUD or the attorney general in circumstances where such private litigants would not usually do so because of their inability to pay counsel fees. *See generally HUD Attorneys' Fees: Hearing on S. 571 Before the Senate Judiciary Comm.*, 95th Cong., 2d Sess. (1978).

The legislative history describing the purpose for awarding attorneys fees to prevailing private litigants in fair housing actions, but not to the United States, is consistent with other fee shifting civil rights statutes passed by Congress. *See, e.g., Newman v. Piggie Park Enterprises*, 390 U.S. 400, 402, 88 S.Ct. 964, 966, 19 L.Ed.2d 1263 (1968) ("Congress therefore enacted the provision for counsel fees—not simply to penalize litigants who deliberately advance arguments they know to be untenable but, more broadly, to encourage individuals injured by racial discrimination to seek judicial relief under Title II.").

■ Based on the explicit language of the 1988 Fair Housing Amendments Act (i.e. sections 3612(p), 3613(c)(2), and 3614(d)(2) of Title 42) and its legislative history, I believe Congress concluded that the government has no right to recover its attorneys fees and costs in housing discrimination actions because it has the resources to prosecute such actions, unlike private litigants.

I conclude that the United States' expenditures on attorneys fees and litigation costs, or, in the repackaged words of Ms. Houk, the United States' "investigative and litigation resources," are not a factor to be considered in the determination of the amount of a civil penalty to be assessed under 42 U.S.C. § 3614(d)(1)(C) against persons who violate the Fair Housing Act. However, although I have explicitly rejected Ms. Houk's legal argument, I find that her overall effort to persuade the court to reach the opposite conclusion to be objectively colorable. I reach this conclusion largely because there is no case law on the novel question of whether the government's "investigative and litigation resources" must be considered by courts in assessing civil penalties pursuant to 42 U.S.C. § 3614(d)(1)(C). Thus, Ms. Houk was entitled to attempt to construct her best possible argument on behalf of her clients from limited authority.

Even though Ms. Houk's legal argument was thus marginally colorable, she could still be subject to sanctions under 28 U.S.C. § 1927 unless there was no subjective bad faith on her part in presenting her legal argument. *See In re TCI Ltd.*, 769 F.2d 441, 445 (7th Cir.1985). I find no evidence in the record of subjective bad faith by Ms. Houk. Therefore, I conclude that Ms. Houk should not be sanctioned in any manner for her representations, subsequently clarified in writing, made to Judge Reynolds at the October 14, 1993, settlement conference. My decision not to sanction Ms. Houk is strengthened by the fact that the court of appeals for the seventh circuit has held that sanctions are usually inappropriate in circumstances where the court ultimately rejects an attorney's legal theory concerning a legal issue that has never been litigated before. *See Overnite Transp. Co. v. Chicago Indus. Tire Co.*, 697 F.2d 789, 790–94 (7th Cir.1983).

■ Even if I were to have found that Ms. Houk had engaged in subjective bad faith in advancing her dubious legal theory concerning the civil penalty/attorney fee issue, I still would not have imposed sanctions against her for two reasons. First, under 28 U.S.C. § 1927, before sanctions may be imposed against an attorney, the attorney must act in such a way as to multiply the proceedings in a case. *See id.* at 794. There have been no extensive proceedings or delays in

this litigation because of any conduct or statements made by Ms. Houk at the October 14, 1993, settlement conference. In fact, the only significant additional proceeding spawned from Ms. Houk's alleged misrepresentations of the law at the October 14, 1993, settlement conference is the motion for sanctions *filed by the defendants* which is presently under consideration.

Secondly, under 28 U.S.C. § 1927, sanctions may only be assessed against an attorney for the "*excess* costs, expenses, and attorneys' fees" reasonably incurred because of an attorney's unreasonable and vexatious conduct in multiplying proceedings. The primary issue addressed in this decision and order, whether the United States' expenditures on attorneys fees and costs is a factor in determining the amount of a civil penalty under 42 U.S.C. § 3614(d)(1)(C), would have had to have been addressed at some point in this litigation in light of the disagreement between counsel on that issue. Consequently, virtually all of the resources expended by the defendants in litigating that issue, save for bringing their present motion for sanctions, would have been required at some point in this litigation. Thus, irrespective of Ms. Houk's representations at the October 14, 1993, settlement conference, her statements have not led to excess costs for the defendants since they would have had to research and brief virtually all of the same points addressed in their papers and motions concerning the civil penalty/attorney fee issue that they have filed since the October 14, 1993, settlement conference.

### ORDER

Therefore, IT IS ORDERED that the defendants' "Motion to Strike the Declaration of Diane L. Houk Dated March 4, 1994" (docket # 113) be and hereby is dismissed as moot.

IT IS ALSO ORDERED that the defendants' "Motion to Strike the Amended Declaration of Diane L. Houk" (docket # 117) be and hereby is denied.

IT IS FURTHER ORDERED that the defendants' motion for sanctions (docket # 105) be and hereby is denied.

IT IS FURTHER ORDERED that the parties will bear their own attorneys fees and costs in connection with the defendants' motions addressed in this decision and order.

Dated at Milwaukee, Wisconsin, this 28th day of April, 1994.