LeBLANG MOTORS, LTD. and Wayne A. LeBlang, Plaintiffs–Appellants,

v.

SUBARU OF AMERICA, INC., Defendant–Appellee.

LeBLANG MOTORS, LTD. and Wayne A. LeBlang, Plaintiffs–Appellants,

v.

SUBARU OF AMERICA, INC., Timothy Wright and Larry Knight, Defendants–Appellees.

Nos. 96–3034, 97–2045 and 97–2874.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 12, 1998.

Decided June 8, 1998.

Stephen Schostok, Michael L. Tinaglia (argued), William M. Dunn, Jeffrey S. McDonald, DiMonte, Schostok & Lizak, Park Ridge, IL, for Plaintiff–Appellant in No. 96–3034.

Stephen Schostok, Michael L. Tinaglia (argued), DiMonte, Schostok & Lizak, Park Ridge, IL, for Plaintiff–Appellant in Nos. 97–2045 & 97–2874.

William J. Gibbons (argued), Joseph A. Sullivan, Robin M. Hulshizer, Latham & Watkins, Chicago, IL, for Defendant–Appellee in No. 96–3034.

William J. Gibbons (argued), Latham & Watkins, Chicago, IL, for Defendant–Appellee in Nos. 97–2045 & 97–2874.

Before BAUER, COFFEY and KANNE, Circuit Judges.

KANNE, Circuit Judge.

This case consists of three consolidated appeals involving LeBlang Motors, Ltd. and Wayne A. LeBlang (collectively "LeBlang"), and Subaru of America. LeBlang challenges the amount of attorneys' fees awarded to Subaru, the dismissal of a stay of enforcement against the order to pay the attorneys' fees, the involuntary dismissal of one of its actions, two pretrial orders, and the dismissal of two individual defendants, Timothy Wright and Larry Knight. Because we find no error in the district court's management of this case, we affirm its orders and decisions.

## I. HISTORY

This case has a long and complex history. We set forth here only those facts relevant to the present appeals.

In March 1989, LeBlang purchased the assets of Ray Subaru, Ltd., and became a Subaru franchise dealer. LeBlang operated this Subaru dealership in Park Ridge, Illinois from September 1989 to November 1993, when LeBlang sold the dealership. In March 1995, LeBlang filed its first lawsuit ("*LeBlang I*") against Subaru, alleging violations of various state and federal statutes as well as breach of contract and fraud.

LeBlang's claims relate to alleged misrepresentations Subaru representatives made regarding the planning volume [1] for the LeBlang dealership. Subaru, through its agent Timothy Wright, told LeBlang that the planning volume number for his dealership was 299. This number dictates net working-capi-

1. Planning volume refers to the overall estimate of the market potential in the dealer's area.

tal requirements, inventory, facility space, and personnel requirements for Subaru franchisees. Given the dealership's existing size, the planning volume number provided by Subaru for LeBlang's franchise precluded LeBlang from offering another car manufacturer's product line at the dealership. After LeBlang committed to the capital, inventory, and personnel requirements prescribed by the planning volume number, another Subaru employee, Larry Knight, informed LeBlang that Subaru reduced LeBlang's planning volume number to 217. At that level, LeBlang could have provided another product line. LeBlang alleged that Subaru knowingly misrepresented the original planning volume number, and as a result of his reliance on that number, LeBlang suffered damages of $1,350,000.

LeBlang filed *LeBlang I.* in state court. Subaru removed the case to the United States District Court for the Northern District of Illinois on the basis of diversity of citizenship. *LeBlang I* proceeded unremarkably toward trial until, in January 1996, the court determined that LeBlang's expert report was inadequate. The court prohibited LeBlang from supplementing its expert report on the ground that Subaru would be prejudiced. LeBlang responded by filing successive motions for reconsideration, each of which the trial court denied. The district court sanctioned LeBlang for its final motion for reconsideration, requiring LeBlang to pay Subaru the amount of its attorneys' fees incurred in responding to the renewed motion for reconsideration. Thereafter, a few weeks before the scheduled trial date, LeBlang moved for a continuance. The trial court denied this motion. LeBlang responded by seeking a voluntary dismissal nine days prior to the set trial date. The court granted the voluntary dismissal subject to the following agreed terms and conditions: "that plaintiffs pay defendant's reasonable attorneys' fees and costs incurred in trial preparation; that all rulings and orders in this case apply in any subsequent refiled action; that the parties will stand ready for trial upon the refiling of this case." Order, *Le Blang Motors, Ltd. v. Subaru of America,* No. 95 C 2693 (N.D. Ill. April 12, 1996).

The trial court subsequently issued an order fixing the amount of attorneys' fees and costs owed to Subaru at $89,032.29. LeBlang appealed that order, and at the same time tried to appeal several pretrial orders from *LeBlang I,* including the court's denial of LeBlang's motion to supplement its expert report. In April 1997, we dismissed LeBlang's appeals of the pretrial orders for lack of jurisdiction because the notice of appeal was filed late. The appeal regarding the amount of attorneys' fees·was timely filed, and is now properly before us.

In November 1996, while the appeal of *LeBlang I* was pending and prior to our partial dismissal of that appeal, LeBlang filed a second lawsuit ("*LeBlang II*") in the United States District Court for the Northern District of Illinois. *LeBlang II* consisted of six of the seven original counts in *LeBlang I.* In March 1997, the district court dismissed *LeBlang II* because of LeBlang's failure to comply with the conditions imposed upon the voluntary dismissal of *LeBlang I.* Specifically, the court found that LeBlang had failed to pay the attorneys' fees as set by the court, and in fact had appealed the order setting the amount of the fees. In addition, the court noted that LeBlang had appealed two discovery-related orders from *LeBlang I* in contravention of the agreed-upon condition that all rulings and orders from *LeBlang I* would apply in any refiled action. After dismissing *LeBlang II* under Fed.R.Civ.P. 41(b), the court turned to a motion filed by LeBlang for a stay of enforcement of the *LeBlang I* fee award. The court dismissed this motion as moot. In April 1997, LeBlang appealed from the dismissal of *LeBlang II,* challenging the dismissal itself, the court's dismissal of the stay of enforcement, and two of the pretrial orders from *LeBlang I.*

LeBlang filed a third lawsuit in January 1997 in state court. This last action ("*LeBlang III*") consisted of the seventh and final remaining count from *LeBlang I. LeBlang III,* unlike *LeBlang I* or *II,* named two former Subaru employees, Tim Wright and Larry Knight, as defendants. LeBlang, Knight, and Wright are all citizens of Illinois. Subaru removed the action to the United States District Court for the Northern District of

Illinois, claiming that Wright and Knight were fraudulently joined in an effort to defeat diversity jurisdiction. In March 1997, LeBlang moved to remand *LeBlang III* to state court. In April 1997, the district court granted Subaru's motion to dismiss Wright and Knight as fraudulently joined, finding that the action against them was barred by the applicable statute of limitations. The court then denied LeBlang's motion to remand.

In May 1997, the district court dismissed *LeBlang III* pursuant to Fed.R.Civ.P. 41(b) for failure to comply with the agreed-upon conditions imposed upon the voluntary dismissal of *LeBlang I*. LeBlang appealed this dismissal claiming that the district court erred in dismissing individual defendants Wright and Knight as fraudulently joined.

We have consolidated the appeals from *LeBlang I*, *II*, and *III*. Presently before us are the following issues: (1) whether the district court abused its discretion in setting the amount of attorneys' fees owed to Subaru in *LeBlang I*; (2) whether the district court abused its discretion in dismissing *LeBlang II*; (3) whether the district court abused its discretion in dismissing the stay of enforcement in *LeBlang II*; (4) whether the district court abused its discretion in denying two pretrial motions in *LeBlang I*—one regarding the supplementation of LeBlang's expert report and the other regarding a continuance of the trial date; and (5) whether the district court erred in *LeBlang III* by dismissing Wright and Knight as fraudulently joined.

## II. ANALYSIS

### A. *Award of Attorneys' Fees*

As a condition of the district court's grant of LeBlang's motion for a voluntary dismissal of *LeBlang I*, LeBlang agreed to pay Subaru its reasonable attorneys' fees and costs incurred in "trial preparation." In its Motion for Fees and Costs Pursuant to April 12, 1996 Order [hereinafter Fees Motion], Subaru requested $127,188.98. This amount reflected all of the attorneys' fees and costs it incurred subsequent to the close of discovery, in other words, all fees charged after February 21, 1996. LeBlang responded to Suba-

ru's motion, calling the requested fee amount "inappropriate" and "absurd." *LeBlang*, relying on *Marlow v. Winston & Strawn*, 19 F.3d 300 (7th Cir.1994) and *Cauley v. Wilson*, 754 F.2d 769 (7th Cir.1985), argued that the court could only award expenses incurred in preparing work product that will not be useful in subsequent litigation. Because LeBlang claimed that most of the work Subaru's attorneys did in the post-February 21 period would be useful in subsequent litigation, LeBlang argued that the fee request was excessive.

The district court reviewed the motions and the time sheets for Subaru's attorneys. It found that while *Cauley* and *Marlow* suggest that an award of attorneys' fees should compensate the other party for work that would not be useful in subsequent litigation, an award of fees and costs need not necessarily be so limited. The court determined that 70% of the work reflected on the time sheets was properly characterized as "trial preparation," and therefore granted Subaru 70% of its fee request. LeBlang appeals this determination.

On appeal, LeBlang continues to rely on *Cauley* and *Marlow* for the proposition that in awarding attorneys' fees after a voluntary dismissal, a court cannot or at least should not award fees for work that will be useful in subsequent litigation. In *Cauley* we recognized that "[t]he purpose of awarding attorneys' fees on a voluntary dismissal without prejudice is to compensate the defendant for the unnecessary expense that the litigation has caused." *Cauley*, 754 F.2d at 772. We explained that "the fee award should reimburse the defendant for expenses incurred in preparing work product that will not be useful in subsequent litigation of the same claim." *Id.*

While *Cauley* suggests this limitation on fee awards, in *Marlow* we recognized that a voluntary dismissal "may be conditioned upon the plaintiff fulfilling whatever terms and conditions the district court, in its discretion, deems necessary to offset the possible prejudice defendant may otherwise suffer from plaintiff dismissing his complaint without prejudice." *Marlow*, 19 F.3d at 303. We found that "[a]s a general rule" the *Cauley*

formulation "is an entirely appropriate condition of dismissal," *id.* at 306, but we did not suggest that it was the only appropriate condition.

In the present case, the trial court. repeatedly emphasized to LeBlang that it would grant the voluntary dismissal only if LeBlang paid Subaru's costs of trial preparation. See *Tr. of Hr'g on Mot. for Voluntary Dismissal at 2, LeBlang Motors, Ltd.,* No. 95 C 2993 (N.D. Ill. April 11, 1996) ("I would consider granting the plaintiff's motion only if the plaintiff . . . is willing to pay the defendants' costs of trial preparation."). In fact, the court explicitly resolved the question of whether it intended to impose costs for trial preparation itself or only for work which would not be useful in subsequent litigation:

> MR. TINAGLIA (attorney for LeBlang): But my question to you was with respect to the cost of attorneys' fees to the defendant, would that be for costs and attorneys' fees that weren't applicable to the refiling, or would that be a total amount your Honor?
>
> THE COURT: The cost that Subaru has incurred preparing for the trial next week.
>
> MR. TINAGLIA: Whether or not those same costs are applicable to a retrial?
>
> THE COURT: I can tell you that I'm not suggesting a blank check should be given to the defense, but certainly on the assumption that this case is going to trial next week as represented in the defense opposition, costs have been incurred and, I assume, a substantial amount of time has been spent in preparation for trial.
>
> . . . . .
>
> MR. Mc DONALD (attorney for LeBlang): Just as a second point of clarification, if this is to be in trial posture upon refiling, then is the Court nevertheless ordering all costs of discovery, pretrial order, and any preparation, or just those THE COURT: No, for trial preparation.

*Id.* at 3, 7. The district court made clear that it was assessing fees for trial preparation, regardless of whether the work could be used in a later trial. In a letter to the court, · LeBlang explicitly agreed to these conditions, stating:

The Court has stated that it would grant the motion to voluntarily dismiss without prejudice with the following conditions imposed:

> 1. That Plaintiffs pay the attorneys fees and costs incurred by Defendant in its preparation for trial; and
>
> 2. That all rulings and orders in the instant case apply to the parties in any subsequent refiled action and the parties stand ready for trial upon the refiling of the case.
>
> With the understanding that Plaintiffs do not waive any right of appeal they have with respect to the rulings and orders in the instant case, Plaintiffs accept the dismissal without prejudice with the conditions imposed by the Court.

Fees Motion, Exh. E.

Because we do not read *Cauley* and *Marlow* as restricting the kind or amount of fees a district court may award upon the granting of a motion for voluntary dismissal, and because LeBlang explicitly agreed to pay Subaru's costs of trial preparation, we do not believe that the district court abused its discretion in awarding Subaru the costs and fees associated with trial preparation.

■ As to the exact amount of fees the court awarded, we affirm a district court's award of attorneys' fees unless the award constitutes an abuse of discretion. *See Dutchak v. Central States, Southeast and Southwest Areas Pension Fund,* 932 F.2d 591, 596 (7th Cir.1991); *Cauley,* 754 F.2d at 772. We owe a high degree of deference to the trial court's determination for three reasons: First, the district court has a " 'superior understanding of the litigation and [we] desir[e to] avoid[ ] frequent appellate review of what are essentially factual matters.' " *Estate of Borst v. O'Brien,* 979 F.2d 511, 514 (7th Cir.1992) (quoting *Hensley v. Eckerhart,* 461 U.S. 424, 437, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983)). Second, the need to achieve uniformity in attorneys' fee awards is not so compelling as to justify a high level of scrutiny. *See id.* Finally, deference assists us in avoiding satellite litigation solely over fees. *See id.*

■ Based on our review of the record, we cannot say that the district court abused its discretion in awarding Subaru $89,032.29 in costs and fees. The court scrutinized the time sheets submitted by Subaru's attorneys and determined that only 70% of the work could properly be characterized as "trial preparation." The court therefore awarded Subaru 70% of its requested fee amount. This was a proper use of the court's discretion, and we therefore uphold the fee award entered in *LeBlang I*.

## B. *Involuntary Dismissal of* LeBlang II

### 1. Jurisdiction

■ Before addressing the merits, we must first determine whether we have jurisdiction to hear this appeal. Under 28 U.S.C. § 1291, courts of appeals are empowered to hear appeals from "final decisions" of a district court. The question before us then is whether the district court's involuntary dismissal of *LeBlang II* was a "final decision." If the dismissal was without prejudice, then it was not a "final decision" unless LeBlang could not file another complaint. See *Ordower v. Feldman*, 826 F.2d 1569, 1572 (7th Cir.1987). On the other hand, if the dismissal acts as an adjudication on the merits, then the dismissal is a "final decision," and we have jurisdiction.

■ In dismissing *LeBlang II*, the district court did not state whether the dismissal was with or without prejudice. It stated only that "Defendant's motion for 'involuntary dismissal of plaintiffs' claims' is granted" and that "this action is dismissed pursuant to Fed.R.Civ.P. 41(b)." Order, *LeBlang Motors, Ltd.*, No. 96 C 7681 (N.D.Ill. March 25, 1997). For reasons we do not understand, Subaru moved for involuntary dismissal of *LeBlang II* without prejudice. Because the court granted Subaru's motion, one could argue that the resulting dismissal was without prejudice. However, Fed.R.Civ.P. 41(b), the Rule pursuant to which the court dismissed *LeBlang II*, states in pertinent part: "Unless the court in its order for dismissal otherwise specifies, a dismissal under this subdivision ... operates as an adjudication upon the merits." Because the district court did not "otherwise specify" in its order, we treat the dismissal as an adjudication upon the merits. The dismissal thus acts as a final decision, and we have jurisdiction under § 1291 to hear this appeal.

### 2. Reasons for the Involuntary Dismissal

When the court dismissed *LeBlang I* on LeBlang's motion, the parties agreed to the following conditions: "[T]hat plaintiffs pay defendant's reasonable attorneys' fees and costs incurred in trial preparation; that all rulings and orders in [*LeBlang I*] apply in any subsequent refiled action; [and] that the parties will stand ready for trial upon the refiling of this case." Order, *LeBlang Motors, Ltd.*, No. 95 C 2693 (N.D. Ill. April 12, 1996). The court found that LeBlang violated these conditions by failing to pay Subaru's attorneys' fees and instead appealing the amount of those fees, and by appealing two pretrial orders relating to discovery filed in *LeBlang I*. The court reasoned that failure to pay the fees was a violation of the first condition, while appealing from the fee order and the two pretrial orders violated the second agreed-upon condition that all *LeBlang I* rulings and orders would apply in any subsequent action. Because LeBlang violated an order of the court, the district court dismissed *LeBlang II* under Fed.R.Civ.P. 41(b) ("For failure of the plaintiff ... to comply with these rules or any order of court, a defendant may move for dismissal of an action or of any claim against the defendant.").

■ We review a dismissal under Rule 41(b) "under the narrow abuse-of-discretion standard." *Pyramid Energy, Ltd. v. Heyl & Patterson, Inc.*, 869 F.2d 1058, 1061 (7th Cir.1989). Because each reason the court provided represents a violation of the order in *LeBlang I* and is therefore sufficient to justify the dismissal, LeBlang must convince us that all the reasons the court gave for the dismissal were somehow incorrect. LeBlang did not meet this burden. Because we find that LeBlang violated the conditions for the voluntary dismissal of *LeBlang I* contained in the court's order, we hold that the court did not abuse its discretion in dismissing *LeBlang II*.

### 3. LeBlang's Claim That It Reserved a Right to Appeal All Orders from *LeBlang I*

 In its letter to the court accepting the conditions for voluntary dismissal of *LeBlang I*, LeBlang asserted: "With the understanding that Plaintiffs do not waive any right of appeal they have with respect to the rulings and orders in the instant case, Plaintiffs accept the dismissal without prejudice with the conditions imposed by the Court." Fees Motion, Exh. E. LeBlang contends that an explicit part of its agreement to the terms imposed by the court was the reservation of the right to appeal all orders and rulings. LeBlang concludes that it cannot now be penalized for asserting a right it expressly reserved. We find this argument unpersuasive.

LeBlang agreed to be bound by the rulings of the court in *LeBlang I*. If we read the statement LeBlang made regarding its "reservation of rights" in the way LeBlang urges, it eviscerates the condition that it would be bound by the rulings of the court. On LeBlang's reading, even though it agreed to be bound by all rulings and orders entered in *LeBlang I*, it was allowed to appeal these rulings (and hopefully have them reversed) so they would not apply in any subsequently filed action. We refuse to read LeBlang's language to allow him to avoid an agreed-upon condition of the voluntary dismissal of *LeBlang I*.

 Additionally, while LeBlang claims that it was "reserving its rights," we note that LeBlang had no right to appeal the pretrial orders. The voluntary dismissal of *LeBlang I* was without prejudice and as such did not constitute a final decision of the court for purposes of § 1291. Additionally, the pretrial orders did not constitute a conclusive resolution completely separate from the merits of the action such that the collateral order doctrine would apply. LeBlang had no right to an interlocutory appeal of these pretrial orders, and thus it had no right capable of being "reserved." The right to appeal vests with a final decision of the court, and no such decision had occurred at that time.

 In light of the above considerations, we read LeBlang's "reservation of rights" to mean that LeBlang had not waived its right to appeal the orders once a final decision was entered in the refiled case and such orders became appealable.[2] However, LeBlang did not wait for a final decision and instead jumped the gun and tried to attack the pretrial orders in an interlocutory appeal. We agree with the district court that LeBlang's premature appeal violated the agreed-upon condition contained in the court's order that all rulings would apply in subsequently filed cases. This violation is sufficient to justify an involuntary dismissal under Fed.R.Civ.P. 41(b), and we therefore conclude that the district court did not abuse its discretion by dismissing *LeBlang II*.

### 4. LeBlang's Claim That the District Court Abused Its Discretion by Dismissing Its Motion for Stay of Enforcement of Attorneys' Fee Award

LeBlang claims that the district court abused its discretion by dismissing its motion for a stay of enforcement of the attorneys' fee award.[3] In light of the above discussion, this argument is moot. LeBlang made this argument to avoid having the court use its failure to pay attorneys' fees as a reason for the involuntary dismissal of *LeBlang II*. This argument only matters if the court had no other reason for granting the involuntary dismissal. Since the involuntary dismissal is supported by other grounds, the question of

---

**2.** As discussed above, the involuntary dismissal of *LeBlang II* operates as an adjudication on the merits. Thus, the pretrial rulings are now capable of review. In fact, LeBlang has availed itself of this forum to challenge several of the pretrial rulings from *LeBlang I*. In Section C *infra* we discuss these claims, giving force to LeBlang's reservation of his right to challenge the rulings.

**3.** In its appeal of *LeBlang II*, LeBlang asserts that the court "denied" its motion for a stay. In

*LeBlang II*, the court did not reach the merits of the motion for a stay. Instead, after granting the motion for involuntary dismissal, it dismissed the motion for a stay as moot. In *LeBlang III*, however, the court did deny LeBlang's motion for a stay. However, LeBlang does not appeal the denial in *LeBlang III*, and therefore we are left only with an appeal of the dismissal from *LeBlang II*.

whether the failure to pay attorneys' fees was an appropriate reason for the dismissal is moot.

Although LeBlang made this argument to extricate itself from the involuntary dismissal, we could read part of LeBlang's brief to state this claim as an independent claim on appeal. However, we need not reach the merits of LeBlang's argument.

Regardless of whether the district court was correct in dismissing LeBlang's motion as moot, the motion is certainly moot now. LeBlang made a motion for a stay pending appeal; this is the appeal for which he was waiting. Thus LeBlang would not be assisted in any way if we chose to grant the stay at this point.

Additionally, a finding that the court should have granted the stay will also not help LeBlang. LeBlang has not been prejudiced in any way by the fact the court did not grant its motion. First of all, as discussed above, the involuntary dismissal would still have been properly granted because there were other independent reasons supporting the dismissal. Second, LeBlang has still not paid the award of attorneys' fees to Subaru. Because LeBlang has not been adversely affected by the court's decision, and since granting or denying the stay would now be moot, we decline to address the merits of LeBlang's contention.

### C. *Pretrial Orders from* LeBlang I

#### 1. Jurisdiction

■■■■ In addition to LeBlang's appeal from the involuntary dismissal of *LeBlang II*, it appeals two pretrial orders from *LeBlang I*. Pursuant to the court's order granting the voluntary dismissal of *LeBlang I*, all pretrial orders in *LeBlang I* would apply in subsequently refiled cases. Thus, these two pretrial orders from *LeBlang I* applied to *LeBlang II*. We have previously determined that the involuntary dismissal of *LeBlang II* is an adjudication on the merits. "An appeal from a final judgment brings up for review by the appellate court all orders (except those that have become moot) rendered by the trial court previously in the litigation." *In re Grabill Corp.*, 983 F.2d 773, 775 (7th Cir.1993). Because the court's order granting the voluntary dismissal of *LeBlang I* essentially required the court and the parties to treat all pretrial orders of *LeBlang I* as if they had been entered in *LeBlang II*, one of these orders is now reviewable on appeal.[4]

#### 2. LeBlang's Motion to Continue

■■■■■ LeBlang contends that the trial court abused its discretion in · denying its motion to continue the trial date. LeBlang's best argument for review of this claim is that had the court granted the motion, LeBlang would not have moved for voluntary dismissal. Had he not so moved, he would not have had to agree to the conditions the violations of which led to the involuntary dismissal of *LeBlang II*. Even if we gave credit to such contingent reasoning, LeBlang would find no relief. "District courts have wide discretion to control their docket by granting or denying motions to continue." *Mraovic v. Elgin, Joliet & Eastern Ry. Co.*, 897 F.2d 268, 270 (7th Cir.1990). The court did not abuse its discretion by denying LeBlang's motion. LeBlang had known about the trial date, and its conflicts with those dates, for over five months. Yet LeBlang waited until one month before trial to ask for a continuance. In these circumstances, the trial court is within its discretion to deny a motion to continue.

### D. *Dismissal of Wright and Knight as Fraudulently Joined*

#### 1. Jurisdiction

In May 1997, the district court granted Subaru's motion for involuntary dismissal of

4. LeBlang argues that the trial court erred in not allowing him to supplement his expert's disclosure. We need not reach the merits of this contention. The court's involuntary dismissal of *LeBlang* II acts as an adjudication on the merits. We have upheld the court's involuntary dismissal. Therefore, because the case was resolved on the merits without a trial, the order disallowing LeBlang to supplement its expert disclosure has no effect, prospectively or retroactively. Because the pretrial orders regarding discovery will never come into play, the question is moot. See *Grabill*, 983 F.2d at 775 (noting that orders which have become moot are not brought up for review on final judgment).

*LeBlang III*. Unlike the order of involuntary dismissal of *LeBlang II*, the order dismissing *LeBlang III* explicitly stated that the dismissal was without prejudice. LeBlang, in a motion to clarify or amend the judgment, requested that the court dismiss *LeBlang III* with prejudice. The court denied this request.

■■■■■ Ordinarily, a dismissal without prejudice is not a final order, and therefore not appealable. See *Farrand v. Lutheran Bhd.*, 993 F.2d 1253, 1254 (7th Cir.1993). "However, '[i]f it is clear that the plaintiff may not start over again with a properly drawn complaint, because of limitations problems or otherwise, the action is treated as final and the order is appealable.'" *Ordower*, 826 F.2d at 1572; see also *Crowder v. True*, 74 F.3d 812, 814 (7th Cir.1996) (finding dismissal to be final order because statute of limitations had expired on underlying claim). In the present action, the statute of limitations on the fraud claim against Subaru had run by the time of the involuntary dismissal.[5] Accordingly LeBlang could not "start over again." The involuntary dismissal thus acts as a final order and the appeal is properly before us.

### 2. Dismissal of Defendants Wright and Knight

LeBlang does not directly challenge the district court's involuntary dismissal of *LeBlang III*. Instead, LeBlang argues that the district court erred in dismissing defendants Wright and Knight. The district court found that the statute of limitations had expired against them, and therefore dismissed them as fraudulently joined. LeBlang asserts that

the finding that the statute of limitations had expired was in error.

■■■■■ Subaru moved for dismissal of Wright and Knight under Fed.R.Civ.P. 12(b)(6). We review the grant of a motion to dismiss *de novo*. See *City Nat'l Bank v. Checkers, Simon & Rosner*, 32 F.3d 277, 281 (7th Cir.1994). We accept all well-pleaded facts alleged in the complaint as true and draw all reasonable inferences in favor of the plaintiff. See *Scott v. O'Grady*, 975 F.2d 366, 368 (7th Cir.1992). However, we do not " 'ignore any facts set forth in the complaint that undermine the plaintiff's claim [nor do we] assign any weight to unsupported conclusions of law.'" *Id.* (quoting *R.J.R. Servs., Inc. v. Aetna Cas. and Sur. Co.*, 895 F.2d 279, 281 (7th Cir.1989)).

■■■■■ We must determine whether the statute of limitations had run against Wright and Knight as of November 26, 1996, the date LeBlang filed *LeBlang III* in state court. If the time to bring the cause of action had expired, then the district court was correct in dismissing Wright and Knight as fraudulently joined. See *Gottlieb v. Westin Hotel Co.*, 990 F.2d 323, 327 (7th Cir. 1993) (Fraudulent joinder occurs when there is no possibility that a plaintiff can state a cause of action against nondiverse defendants in state court.).

■■■■■ The statute of limitations for fraud in Illinois is five years. See 735 Ill. Comp. Stat. 5/13–205. Under Illinois law, a cause of action accrues, and the statute of limitations begins to run, when the party "knows or reasonably should know both that an injury has occurred and that it was wrongfully caused."[6] *Nolan v. Johns–Man-*

---

5. To determine jurisdiction to appeal from the involuntary dismissal, we look only to the claim as it existed at the time of the dismissal. Because the district court had previously dismissed Wright and Knight, the only remaining defendant was Subaru. We therefore examined only the fraud claim against Subaru to ascertain whether the statute of limitations had run. At issue in this appeal is whether the statute of limitations had run against the dismissed defendants, Wright and Knight. The statute of limitations question is therefore central as it applies to these defendants, and by resolving jurisdiction we do not resolve this secondary statute of limitations question.

6. While usually the determination of when the statute of limitations begins to run is a question of fact for the jury, the Illinois Supreme Court has noted that this is not always so. "Where it is apparent from the undisputed facts ... that only one conclusion can be drawn, the question becomes one for the court." *Witherell v. Weimer*, 85 Ill.2d 146, 52 Ill.Dec. 6, 421 N.E.2d 869, 874 (1981). In the present case the facts and necessary conclusions are sufficiently clear to meet the Illinois standard.

*ville Asbestos*, 85 Ill.2d 161, 52 Ill.Dec. 1, 421 N.E.2d 864, 868 (1981). Once a party becomes aware of the injury and that it was wrongfully caused, "the party is under an obligation to inquire further to determine whether an actionable wrong was committed." *Id.*

■■■ Subaru argues that LeBlang's fraud action accrued in mid-April 1990, when LeBlang learned its planning volume had been reduced to 217 from 299. Subaru relies on Wayne LeBlang's statements in a deposition, wherein he stated that when he was advised of the reduced planning number, he felt he "had been had," and that he "had been lied to." LeBlang stated, "I was so upset that I sought legal counsel. . . . I was advised that we probably had a lawsuit; and they wanted to commence immediately." Dep. of Wayne A. LeBlang at 193–95, Defs.' Reply Mem. in Supp. of Their Mot. to Dismiss and in Opp'n to Pl.'s Mot. to Remand, Exh. B, *LeBlang Motors, Ltd.*, No. 97 C 1307 (N.D. Ill. filed March 25, 1997). Subaru alleges that LeBlang was fully aware that it had a fraud claim as of mid-April 1990 and that this conclusion is consistent with LeBlang's filing of *LeBlang I* on March 31, 1995, just days before the expiration of the five year statute of limitations.

LeBlang counters that even if its fraud action accrued against Subaru in mid-April 1990, it did not accrue against Wright and Knight until late 1995 or early 1996, when LeBlang learned that Wright and Knight were aware that the planning volume number supplied to LeBlang was overstated. In other words, LeBlang asserts that the cause of action against Wright and Knight did not accrue until LeBlang learned, through discovery in *LeBlang I*, that Wright and Knight were aware that the numbers they passed on were too high.

We hold that LeBlang's fraud action accrued against all potential defendants in mid-

April 1990, when LeBlang learned that the planning volume number he was given was inflated. LeBlang's deposition testimony establishes that LeBlang believed at that time that he had been injured, and also believed that the injury was caused by a lie.[7] Therefore, LeBlang "kn[ew] . . . both that an injury ha[d] occurred and that it was wrongfully caused." *Nolan*, 52 Ill.Dec. 1, 421 N.E.2d at 868. This is all that is required for the statute to begin running in Illinois.

That LeBlang did not know of Wright and Knight's complicity at the time is irrelevant if not somewhat unbelievable; Wright and Knight were supplying the allegedly fraudulent information to LeBlang, but LeBlang would have us believe that it had no reason to know that it could have a cause of action against Wright and Knight. Regardless, once LeBlang was aware of the injury and that it had been wrongfully caused, he was "under an obligation to inquire further to determine whether an actionable wrong was committed." *Id.* A thorough investigation mandates that LeBlang consider the potential liability of all parties involved in supplying the planning volume number, and Wright and Knight should have been included in this investigation. LeBlang did not have the right to wait until nearly seven years later, when pretrial discovery uncovered information that may have supported a cause of action against Wright and Knight. See *Singletary v. Continental Ill. Nat'l Bank & Trust Co.*, 9 F.3d 1236, 1243 (7th Cir.1993) (assessing Illinois statute of limitations in a fraud action and holding "[t]he significance of [plaintiff] having known . . . that he had been wronged, even if he was not sure by whom, should thus be apparent: knowing that he had been wronged, he was obliged as a reasonable person to begin inquiring as to who might have wronged him").

LeBlang would have us eviscerate these principles by holding that its cause of action

---

7. LeBlang asserts that it is an open question as to when its injury occurred. However, the fact that after learning that the planning volume number was reduced LeBlang sought counsel suggests that LeBlang felt at that time that it was injured. If the planning volume number was overstated, LeBlang would have more capital, inventory, and personnel than it needed. It is this over-capitalization that constitutes LeBlang's

injury. LeBlang concedes as much in its complaint, alleging that "[a]s a direct and proximate result of the misrepresentations of [Subaru] and its agents the value of the franchise and dealership of [LeBlang] was greatly diminished." The value of the dealership diminished when Subaru revised the planning volume number, not at some later date when LeBlang sold the dealership.

against Wright and Knight did not accrue until it knew of the injury and also learned that Wright and Knight knew their conduct was fraudulent. We decline to do so. It was sufficient that LeBlang believed that Subaru fraudulently misrepresented the planning volume number; this awareness triggered the duty to inquire about a cause of action against those parties involved. LeBlang cannot suggest that it did not know of Wright and Knight's involvement since they were the agents through which Subaru spoke. Thus LeBlang's cause of action accrued against Subaru, Wright and Knight in mid-April 1990. *See City Nat'l Bank*, 32 F.3d at 277 (holding that cause of action against accountants accrued when bank was aware of its injury and that it was wrongfully caused, not when bank learned that accounting firm knew the information supplied to it was false). We hold that the district court was correct in finding that the statute of limitations barred LeBlang's action against Wright and Knight. Because LeBlang could not state a cause of action against them, the district court properly dismissed Wright and Knight as fraudulently joined.

We therefore AFFIRM the foregoing orders and decisions of the district court.