Byron CLEAVES, Plaintiff,

v.

CITY OF CHICAGO, Defendant.

No. 98 C 1219.

United States District Court,
N.D. Illinois,
Eastern Division.

Sept. 17, 1999.

As Amended on Reconsideration
Oct. 14, 1999.

Henry Thrush Synek, Attorney at Law, Chicago, IL, for Byron Erick Cleaves.

Byron Erick Cleaves, Chicago, IL, pro se.

Brian L. Crowe, Shefsky, Froelich & Devine, Ltd., Chicago, IL, Patrick J. Rocks, Jr., Jay Michael Kertez, George Ronald Thomson, Mara Stacy Georges, City of Chicago, Law Department, Corporation Counsel, Chicago, IL, James Lawrence Schwartz, Attorney at Law, Chicago, IL, for City of Chicago Police Department, defendant.

### *MEMORANDUM OPINION AND ORDER*

BUCKLO, District Judge.

Byron Cleaves, an African–American man, was fired from his probationary position as a Chicago Police Officer in October 1997 when he called in sick because of the death of his fiancé's stepfather. Mr. Cleaves applied for Illinois unemployment benefits in May 1998, but was denied these on the grounds that his termination was for cause. After exhausting his administrative appeals with respect to the unemployment insurance, he filed complaints with the EEOC in October 1997 and June 1998 and, when he received his right-to-sue letter, he filed this lawsuit against the City of Chicago (the "City"), alleging violations of Title VII, 42 U.S.C.2000e under (1) sex and (2) race discrimination and (3) retaliation, (4) violations of the Equal Pay Act, 29 U.S.C. § 206(d)(1), and (5) violations of his constitutional rights to free speech actionable under 42 U.S.C. § 1983. The City moves to dismiss Mr. Cleaves' complaint under Fed.R.Civ.P. 12(b)(6), except for the race discrimination claim connected with his termination, which it does not challenge here for failure to state a claim. The motion is granted with respect

to the sex discrimination and Equal Pay Act claims, but denied with respect to the retaliation theory, where Mr. Cleaves has stated a claim. I also grant the City's motion to dismiss Mr. Cleaves' race discrimination claim as time-barred and grant its motion to strike his claims for punitive damages.

Mr. Cleaves was a probationary Police Office employed by the City until his termination in October 1997. The factual basis of his lawsuit here turns on two incidents. The first involved a statement Mr. Cleaves made during his probationary period to the Internal Affairs Department of the Chicago Police Department in connection with a charge of sexual harassment made by someone else against another officer. The statement involved speaking in support of the officer charged with sexual harassment. Mr. Cleaves alleges that he and other recruits were warned not to speak about the incident and that if someone violated this instruction, he or she would be fired. This is the basis of his retaliation claim. The second incident was the matter involving the death of Mr. Cleaves' fiancé's stepfather. Mr. Cleaves called in sick in May 1997, telling the Chicago Police Department that he had a death in the family. He identified the decedent as his father-in-law. When the actual relationship came to light in the seventh month of his probationary period, he was terminated—officially for being absent without leave and filing a false report. This is the basis of his other discrimination claims.

A motion to dismiss under 12(b)(6) "challenges the sufficiency of the complaint for failure to state a claim upon which relief may be granted." *Maple Lanes, Inc. v. Messer*, 186 F.3d 823, 824–25 (7th Cir.1999). A complaint should not be dismissed for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.* (internal quotation omitted). All well-pleaded facts alleged in the complaint are to be accepted as true and all reasonable inferences drawn in favor of the plaintiff. *LeBlang Motors, Ltd. v. Subaru of America, Inc.*, 148 F.3d 680, 690 (7th Cir.1998). At a minimum, a "complaint must contain facts sufficient to state a claim as a matter of law, and mere conclusory allegations ... are insufficient to survive a motion to dismiss." *Fries v. Helsper*, 146 F.3d 452, 457 (7th Cir.1998). However, complaints drafted by *pro se* plaintiffs are to be construed "liberally."[1] *Mallett v. Wisconsin Div. of Vocational Rehabilitation*, 130 F.3d 1245, 1248 (7th Cir.1997) (internal citations omitted), and Mr. Cleaves, although now represented by counsel, was acting *pro se* when he filed his complaint.

Mr. Cleaves argues, first, that his firing involved illegal sex discrimination under Title VII because, had he been "an unmarried woman, rather than an unmarried man, the City would have granted him paid leave due to the death of the father of his female domestic partner." In support of this claim, Mr. Cleaves adduces the City's Domestic Partner Benefits Eligibility Ordinance. City of Chicago Municipal Ordinance § 2–152–072 (the "Ordinance"). This provides that unmarried employees of the same sex who cohabit and are registered with the City as domestic partners are entitled to certain benefits. Mr Cleaves claims that, in view of this Ordinance, if he had been a woman and everything else in his situation had been the same, he would not have been terminated for taking bereavement leave when his partner's father died. This, he avers, shows he was fired because of sex, that is, merely because he was a man and not a woman.[2]

---

1. Mr Cleaves has been represented by counsel since May 1999, but no second amended complaint has been filed. I therefore decide this motion on the plaintiff's *pro se* pleadings as supplemented by other filings and an attorney-drafted response to the motion here under consideration.

2. The Ordinance was passed to give quasi-marital benefits to gay and lesbian couples, although it does not mention sexual orientation. The City argues that sexual orientation is not a protected category under Title VII, but this is irrelevant, since Mr. Cleaves does not

This is creative and clever but incorrect. Mr. Cleaves' contention, in effect, is that if the City extends bereavement benefits to unmarried same-sex couples who cohabit, then Title VII requires those same benefits to be extended to unmarried opposite-sex couples who cohabit. Title VII, like most federal civil rights laws, is "silent on the issue of marital-status discrimination." *Thomas v. Anchorage Equal Rights Comm'n*, 165 F.3d 692, 716 (9th Cir.1999) (dictum). It is true that the Seventh Circuit has held that discrimination on the basis of marriage plus sex violates Title VII. *See Sprogis v. United Air Lines*, 444 F.2d 1194, 1198 (7th Cir. 1971) (A no-marriage rule directed against only female flight attendants is sex discrimination.).

However, the Ordinance does not involve treating men less favorably than women on the basis of marital status, but only treating unmarried same-sex couples differently from unmarried opposite-sex couples. It treats men and women exactly the same: if Mr. Cleaves' nonmarital partner were male and they otherwise met the criteria for domestic partnership, he would have been eligible for any benefits available to same-sex female couples, including bereavement benefits if these were included. The Ordinance is therefore legal discrimination on the basis of marital status, not sex discrimination involving discrimination against men (or women) because of marital status. As the Tenth Circuit said, "Title VII prohibits employers from treating married women differently than married men, but it does not protect marital status alone." *Coleman v. B–G Maintenance Mgt. of Colorado, Inc.*, 108 F.3d 1199, 1204 (10th Cir.1997). Accordingly, Mr. Cleaves has not stated a claim for sex discrimination merely because he was not allowed to take advantage of bereavement policies available under the Ordinance.

Mr. Cleaves argues, second, that the City violated the Equal Pay Act because the City would have granted him paid leave due to the death of his partner's father. Because the Ordinance does not cover opposite-sex married couples, Mr. Cleaves argues that it illegally discriminated against him in unjustifiably using sex as a criterion in its domestic partner compensation program. But, for one, the Ordinance, as explained, does not discriminate on the basis of sex but only on the basis of marital status. For another, Mr. Cleaves offers no authority for the proposition that paid leave would constitute "wages" under the Equal Pay Act, and I can find no case law supporting that claim. Finally, even if paid bereavement leave counted as "wages" under the Equal Pay Act, Mr. Cleaves would have no cause of action under that statute. Even if the man and woman are doing the same work for different pay, if the difference is due to a factor unrelated to gender, there is no violation. *Lindale v. Tokheim Corporation*, 145 F.3d 953, 957 (7th Cir.1998); 29 U.S.C. S 206(d)(1)(iv). For the reasons already set forth, Mr. Cleaves would be denied paid bereavement leave under the Ordinance because of his marital status and not because of his sex.

Finally, Mr. Cleaves contends that he was the victim of illegal retaliation for speaking out in the sexual harassment incident, on the basis of which, in part, he contends that he was terminated. Mr. Cleaves has stated a claim under a Title VII "participation" theory. Title VII forbids an employer to "discriminate against any individual ... because he has made a charge ... or participated in any manner in an investigation, proceeding, or hearing under" Title VII. 42 U.S.C. § 2000e–3(a). In order to state a prima facie case of Title VII retaliation, Mr. Cleaves must have: (1) engaged in statutorily protected expression; (2) suffered an adverse action by his employer; and (3) asserted a causal link between his protected expression and the adverse action. *See McKenzie v. Illinois Dep't of Transportation*, 92 F.3d 473, 483 (7th Cir.1996). Mr. Cleaves' report to IAD satisfies the requirement that

argue that he was discriminated against because he was heterosexual.

he participated in some manner in an investigation.[3] He certainly suffered adverse employment consequences. And his pleadings contain a statement that these are causally linked: Mr. Cleaves asserts that he was fired because of his protected participation. Accordingly, he has stated a retaliation claim on which he may proceed.

 Mr. Cleves also frames his retaliation claim in terms of a violation of the First Amendment. This can be read as a claim for violation of his constitutional rights under 42 U.S.C. § 1983. In order to establish a First Amendment retaliation claim, the facts alleged in the complaint must show that (1) the speech in which the plaintiffs engaged was constitutionally protected under the circumstances, and (2) the defendants retaliated against them because of it. *Gustafson v. Jones,* 117 F.3d 1015, 1018 (7th Cir.1997). In deciding whether the government has wrongfully deprived an employee of his right to freedom of speech, the threshold question is whether the speech at issue addressed a matter of public concern. See *Button v. Kibby–Brown,* 146 F.3d 526, 529 (7th Cir. 1998) (quoting *Connick v. Myers,* 461 U.S. 138, 146, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983)). The issue of sex discrimination in public employment is, "of course, a matter of public concern." *Kokkinis v. Ivkovich,* 185 F.3d 840, 843–44 (7th Cir.1999). Since Mr. Cleaves' speech addressed itself to sexual harassment and not merely to remedy a personal problem, *contrast Callaway v. Hafeman,* 832 F.2d 414, 417 (7th Cir. 1987), he passes the first hurdle. He passes the second because he states that he was subject to retaliation for this speech.

 The City replies that Mr Cleaves' § 1983 claim should be dismissed because he has not alleged that the City had a policy of firing employees in retaliation for speech. See *Monell v. Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). However, Mr. Cleaves was *pro se* when he filed the pleadings under consideration, and district courts have a "special responsibility to construe *pro se* complaints liberally." *Donald v. Cook County Sheriff's Dep't,* 95 F.3d 548, 555 (7th Cir.1996). No magic words are required as long as it is not "beyond doubt that petitioner can prove no set of facts in support of his claim which would entitle him to relief." *Id.* at 555 n. 2. It is not beyond doubt that he might do so. Moreover, were magic words required, Mr. Cleaves' response to the City's present motion to dismiss, drafted by counsel, expressly alleges that there was and is such a policy or practice in existence.

 The City argues that Mr. Cleaves' race discrimination claim should be dismissed as time barred because he did not file a complaint alleging race discrimination until June 1998, more than 300 days after he was terminated in October 1997. In order to bring suit in federal court under Title VII for discrimination, a plaintiff must have filed a charge with the EEOC detailing the basis of the plaintiff's allegations within 300 days of the date of its occurrence. 42 U.S.C. § 2000e-5(e); *EEOC v. Harvey L. Walner & Assocs.,* 91 F.3d 963, 970 (7th Cir.1996) ("Illinois is a 'deferral state,' and so the limitation period runs for 300 days from the date of the alleged discrimination."). When a plaintiff fails to do so, the complaint is untimely. *Hentosh v. Herman M. Finch University of Health Sciences/the Chicago Medical School,* 167 F.3d 1170, 1173–1174 (7th Cir. 1999).

 Mr. Cleaves filed in a timely way a complaint with his sex discrimination and retaliation claims and also alleging "other"

---

**3.** The City cites an Eleventh Circuit case, *Clover v. Total System Servs., Inc.* 157 F.3d 824, 829–30 (11th Cir.1998), *vacated* 172 F.3d 795 (11th Cir.1999), for the proposition that only EEOC investigations are "investigations" for purposes of a retaliation claim. The Seventh Circuit, however, has not so held, and the 11th Circuit has vacated the opinion in any event.

discrimination, but he did not then state any facts which would put anyone on notice that race discrimination was an issue. He filed a complaint alleging race discrimination outside the 300 day period. I have already held that the race claim was not within the scope of the "other" claim. Mr. Cleaves states that he does not know why his initial complaint did not allege race discrimination and that the boxes were checked by the EEOC intake officer.

 Unfortunately for him, that does not excuse late filing. A limitations period may be suspended under the doctrine of equitable tolling "when the prospective plaintiff simply does not have·and cannot with due diligence obtain information essential to bringing a suit," *Anderson v. Bd. of Regents of the University of Wisconsin System*, 140 F.3d 704, 706 (7th Cir. 1998), but that is not the case here. Mr. Cleaves had all the information he needed. Likewise the Supreme Court has allowed equitable tolling "where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass." *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990). Mr. Cleaves makes no such allegation.

Mr. Cleaves suggests that he may be allowed to maintain the claim under a continuing violation theory. This allows a time-barred act of discrimination to be linked with acts that fall within the statutory limitations period. See *Selan v. Kiley*, 969 F.2d 560, 564 (7th Cir.1992). Courts will then treat the series of acts as one continuous act ending within the limitations period. *Id.* The continuing violation doctrine is applicable, however, only if it would have been unreasonable to expect the plaintiff to sue before the statute ran on the conduct, for example if the conduct could constitute, or be recognized, as actionable only in the light of events that occurred later, within the period of the statute of limitations. *Filipovic v. K & R Express Systems, Inc.*, 176 F.3d 390, 396 (7th Cir.1999). That is not the case here.

Mr. Cleaves' race discrimination claim is therefore dismissed as time·barred.

Finally, the City moves that Mr. Cleaves' prayer for punitive damages be stricken because they are not available for the causes of action he has stated. Title VII provides that parties may recover punitive damages "against a respondent (other than a government, government agency or political subdivision)." *Baker v. Runyon*, 114 F.3d 668, 669 (7th Cir., 1997) (*quoting* 42 U.S.C. S 1981a(b)(1)), and the City is clearly a political subdivision. Moreover, the Supreme Court has held that municipalities are not liable for punitive damages in a 1983 action. *See City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981).

The City's motion to dismiss Mr. Cleaves' Title VII sex discrimination and Equal Pay Act claims for failure to state a claim is GRANTED, as is its motion to strike Mr. Cleaves' claim for punitive damages. The City's motion to dismiss Mr. Cleaves' retaliation claims under Title VII and § 1983 for failure to state a claim is DENIED. The City's motion to dismiss Mr. Cleaves' race discrimination claim as time barred is GRANTED.